**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEBRASKA**

| | |
|---|---|
| NATIONAL LEGAL AND POLICY CENTER, PETER T. FLAHERTY, and JAMES "JAMIE" R. TOVAR, <br><br> Plaintiffs, <br><br> v. <br><br> BERKSHIRE HATHAWAY INC. WARREN BUFFETT, JOHN DOE 1, and JOHN DOE 2, <br><br> Defendants. | Civil Action No.: 8:24-CV-162 |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

# <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ....................................................................................................................... 4

    A.    The Parties ................................................................................................. 4

    B.    NLPC's Independent Chair Shareholder Proposal ................................... 4

    C.    Plaintiffs' Presentation at the 2023 Shareholders' Meeting .................... 5

    D.    Plaintiffs File Suit ................................................................................... 7

LEGAL STANDARD ................................................................................................................ 8

ARGUMENT ............................................................................................................................ 9

I.     Mr. Flaherty's Intentional Tort Claims Fail as a Matter of Law ....................... 9

    A.    A Request That Mr. Flaherty Leave a Private Event Due to His
            Misconduct Is Not Assault as a Matter of Law (Count I Against
            Berkshire Hathaway) ............................................................................ 10

    B.    Requesting Police Assistance to Remove a Trespasser Is Not Battery,
            False Imprisonment, or Malicious Prosecution (Counts III, IV and V
            Against Mr. Buffett and Berkshire Hathaway) ...................................... 12

         1.    A Police Officer's Independent Decision to Arrest a Trespasser
                Does Not Render Defendants Liable for False Imprisonment
                (Count IV) ................................................................................. 12

         2.    Defendants Are Not Liable for Battery for Asking the Police to
                Eject a Trespasser (Count III) .................................................... 14

         3.    Asking for Police Assistance Is Not Malicious Prosecution
                (Count V) ................................................................................. 15

    C.    Mr. Flaherty's Intentional Infliction of Emotional Distress Claim Fails as
            a Matter of Law (Count IV) .................................................................. 17

II.    Mr. Tovar's Intentional Tort Claims Fail as a Matter of Law (Counts IV, V, VI
      Against Mr. Buffett and Berkshire Hathaway) ................................................ 19

III.   Plaintiffs Flaherty and NLPC Have Failed to State a Claim for Promissory
      Estoppel (Count IX Against Mr. Buffett and Berkshire Hathaway)................. 21

IV.   Mr. Flaherty Does Not Plead Facts That Plausibly Show Mr. Buffett Is Liable on
      Any Claim ..................................................................................................... 22

CONCLUSION ..................................................................................................................... 23

## **TABLE OF AUTHORITIES**

Page(s)

**Other Authorities**

*Acton v. Acton*,
   No. A-04-147, 2006 WL 908872 (Neb. Ct. App. Apr. 11, 2006)....................................17, 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................................9

*Barber v. State*,
   316 Neb. 398 (2024)..........................................................................................................15

*Barton v. Taber*,
   820 F.3d 958 (8th Cir. 2016)..............................................................................................8

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................8

*Bell v. Dow Chem. Co.*,
   No. 21-326-SDD-SDJ, 2022 WL 1221639 (M.D. La. Mar. 11, 2022)..............................23

*Bergman v. Anderson*,
   226 Neb. 333 (1987)..........................................................................................................11

*Bissonette v. Luskey*,
   No. 02-335 ADM/AJB, 2003 WL 1700466 (D. Minn. Mar. 27, 2003)..............................22

*Corrado v. Life Inv'rs Ins. Co. of Am.*,
   804 F.3d 915 (8th Cir. 2015)..............................................................................................8

*Cowperthwait v. Brown*,
   82 Neb. 327 (1908)..............................................................................................................9

*Cullars-Doty v. City of St. Paul*,
   No. 21-cv-94 (NEB/ECW), 2021 WL 5868202 (D. Minn. Dec. 10, 2021)..........................5

*Dangberg v. Sears, Roebuck & Co.*,
   198 Neb. 234 (1977)....................................................................................................21, 25

*Daniels v. Kaiser Found. Hosps.*,
   No. SACV 24-00022-CJC (JDEx), 2024 U.S. Dist. LEXIS 73074 (C.D. Cal. Apr.
   19, 2024)............................................................................................................................16

*Dion v. City of Omaha*,
   311 Neb. 522 (2022)..........................................................................................................16

*Edgar v. Omaha Pub. Power Dist.*,
   166 Neb. 452 (1958)....................................................................................................14, 15

*Gibson v. Hadzic*,
   No. 4:22-CV-00163-SPM, 2023 WL 8697785 (E.D. Mo. Dec. 15, 2023)..........................18

*Harrington v. Strong*,
   363 F. Supp. 3d 984 (D. Neb. 2019)..................................................................................24

ii

*Hires v. City of Mishawaka*,
    No. 3:22-CV-130 DRL-MGG, 2022 WL 16745031 (N.D. Ind. Nov. 4, 2022) ..................... 12

*Hoffert v. Westendorf*,
    854 F. App'x 93 (8th Cir. 2021) ....................................................................................... 19

*Holmes v. Crossroads Joint Venture*,
    262 Neb. 98 (2001) ................................................................................................... 13, 17

*Huskinson v. Vanderheiden*,
    197 Neb. 739 (1977) ................................................................................................. 13, 14

*In re CV Scis., Inc.*,
    No. 2:18-cv-01602-JAD-BNW, 2019 WL 6718086 (D. Nev. Dec. 10, 2019) ........................ 5

*Kasiah v. Crowd Sys.*,
    915 F.3d 1179 (8th Cir. 2019) ........................................................................................ 16

*Kenney v. Barna*,
    215 Neb. 863 (1983) ........................................................................................................ 9

*Lovell v. Kearney*,
    200 Neb. 478 (1978) ...................................................................................................... 25

*Maynard v. State*,
    81 Neb. 301 (1908) ................................................................................................... 11, 15

*Moratzka v. Morris (In re Senior Cottages of Am., LLC)*,
    482 F.3d 997 (8th Cir. 2007) ........................................................................................... 5

*Nasuti v. Holm*,
    No. 3:22-cv-00025-RGE-SBJ, 2022 WL 18779981 (S.D. Iowa Oct. 31, 2022) ................... 23

*Page v. Siedband*,
    No. A-19-121, 2023 WL 7499741 (Neb. Ct. App. Nov. 14, 2023) ....................................... 23

*Phillips v. Liberty Mut. Ins. Co.*,
    293 Neb. 123 (Neb. 2016) .............................................................................................. 15

*Pinkston v. Bd. of Educ.*,
    No. 19 CV 6477, 2023 WL 6392302 (N.D. Ill. Oct. 2, 2023) ............................................ 22

*Podraza v. Whiting*,
    790 F.3d 828 (8th Cir. 2015) ............................................................................................ 4

*Reavis v. Slominski*,
    250 Neb. 711 (1996) ................................................................................................. 11, 22

*Richardson v. BNSF Ry. Co.*,
    2 F.4th 1063 (8th Cir. 2021) ...................................................................................... 19, 20

*Schieffer v. Cath. Archdiocese of Omaha*,
    244 Neb. 715 (1993) ...................................................................................................... 19

*State v. Goering*,
    Nos. A-93-1128, 1994 WL 585763 (Neb. Ct. App. Oct. 25, 1994) .............................. 11, 14

*State v. Wright*,
    235 Neb. 564 (1990) ............................................................................ 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ............................................................................ 4

*Warner v. Warner*,
    No. 8:22-CV-377, 2024 WL 1013898 (D. Neb. Mar. 8, 2024) ........... 20

*Weitz Co., LLC v. Hands, Inc.*,
    294 Neb. 215 (2016) .......................................................................... 23

*Willstrop v. Prince Mktg. LLC*,
    No. 8:17CV350, 2019 WL 11851138 (D. Neb. June 28, 2019) ......... 25

*Zink v. Lombardi*,
    783 F.3d 1089 (8th Cir. 2015) ........................................................... 9

**Rules**

17 C.F.R. § 240.14 ................................................................. 5, 11, 22

Omaha Mun. Code § 20-155 ................................................................ 9

Fed. R. Civ. P. 12(b)(6) ...................................................................... 8

**Other Authorities**

Josh Funk, *Warren Buffett's Company Rejects Proposals, But It Faces a Lawsuit Over How It Handled One Last Year*, A.P. News (May 4, 2024), available at https://apnews.com/article/berkshire-hathaway-warren-buffett-shareholder-meeting-lawsuit-c8a06d66256f902157e15b5ea717a9c7 ..................... 3

Omaha Police Department Policy ........................................................ 13

Peter Flaherty, *Peter Flaherty Arrested During Berkshire Meeting for Mention of Bill Gates & Jeffrey Epstein*, available at YouTube (May 11, 2023), https://www.youtube.com/watch?v=ErHXIrDNz14 .............................. 6

Trespassing Policy, Omaha Police Department, Section VI: Request to Leave, available at https://public.powerdms.com/OPDEP1/documents/854044 ................ 9

Defendants Berkshire Hathaway Inc. ("Berkshire Hathaway") and Warren Buffett (together, "Defendants") respectfully submit this Brief in support of their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff Peter Flaherty is a trespasser. On May 6, 2023, Mr. Flaherty was asked to leave Berkshire Hathaway's annual shareholders' meeting ("2023 Shareholders' Meeting") at the CHI Health Center Arena due to his inappropriate behavior. Mr. Flaherty refused. An Omaha police officer witnessed Mr. Flaherty's trespass and arrested him for trespass. One year later, Plaintiffs filed this action to turn the Omaha Police Department's independent decision to arrest Mr. Flaherty for trespassing into intentional tort claims against Warren Buffett, Berkshire Hathaway, and two security guards it allegedly hired. The Complaint pleads no cognizable cause of action, is without merit, and should be dismissed with prejudice.

For more than 100 years, Nebraska property owners, or those in possession of property, have had the right to request unwanted guests to leave. Consistent with that well-established right, Omaha has a "Request to Leave" ordinance, which prohibits any person from refusing to leave the property of another after being notified to leave by the owner, occupant, person in control or by their agent. To enforce the ordinance, persons in control of property are permitted to ask for police assistance. The Omaha Police Department requires the arresting officer to witness the trespasser refuse to leave in response to a request to leave before exercising the independent judgment to make any arrest. Plaintiffs' claims in this action rest on the untenable proposition that Nebraska and Omaha trespass law does not apply to them.

Plaintiff National Legal and Policy Center ("NLPC") holds itself out as a "shareholder activist" which purports to advocate for corporate governance reform at companies like Berkshire

Hathaway. Mr. Flaherty, as NLPC's representative, was given the microphone at Berkshire Hathaway's 2023 Shareholders' Meeting to present a proposal that an independent director— rather than Mr. Buffett—be chair of the Board of Directors of Berkshire Hathaway. Instead of presenting such a proposal, Mr. Flaherty espoused theories about "dark money machine[s]," "gender identity toolbox[es]," and the "virus of philanthropy." When Mr. Flaherty began making personal attacks and accusing a Berkshire Hathaway stockholder of "sex crimes," security guards asked him to leave. After Mr. Flaherty refused to leave, he was asked to leave again in the presence of an Omaha police officer. Mr. Flaherty refused and the police officer arrested Mr. Flaherty, removed him from the arena, and detained him for three hours.

One year later (the day before Berkshire Hathaway's 2024 shareholders' meeting), Plaintiffs filed this action alleging intentional torts based on Mr. Flaherty's removal from the arena as a trespasser. In addition, NLPC (the only plaintiff actually alleged to be a shareholder) and Mr. Flaherty assert a promissory estoppel claim because Defendants allegedly "breached" their "promise" that NLPC could present a proposal regarding corporate governance at the 2023 Shareholders' Meeting. But these claims are unsupported by any well-pled facts or law.

*First*, the only intentional tort Mr. Flaherty pleads is his own intentional trespass. Trespassing has consequences. It entitled Defendants to eject Mr. Flaherty from the 2023 Shareholders' Meeting at the arena, and it compels dismissal of all of his tort claims now.

*Second*, Plaintiff James Tovar (who is allegedly Mr. Flaherty's "assistant") brings intentional tort claims based on the allegation that he was not "permitted to follow" Mr. Flaherty through his arrest and detention. Mr. Tovar's claims, while certainly novel, are not cognizable in law, or supported by any well-pled fact.

*Third*, NLPC and Mr. Flaherty have no cognizable claim based on "promissory estoppel." NLPC was required by federal regulations to present any corporate governance proposal it wished to make in person at the 2023 Shareholders' Meeting. So, Mr. Flaherty incurred the expense of appearing at the 2023 Shareholders' Meeting because NLPC ostensibly wished to make a proposal, not because of anything promised to NLPC or Mr. Flaherty by Berkshire Hathaway or Mr. Buffett. In fact, the Complaint does not plausibly allege that Plaintiffs were "promised" anything by Berkshire Hathaway or Mr. Buffett, nor that they reasonably relied on any promise to their detriment. Specifically, Plaintiffs have not alleged that they reasonably relied on a promise that their wild conspiracy theories and personal attacks that led to their ejection would be published on Berkshire Hathaway's website (which is the relief that they seek) because no such promise was ever made.

As for NLPC's corporate governance proposal, which Mr. Flaherty allegedly traveled to Omaha to make, it was published in Berkshire Hathaway's 2023 proxy statement prior to the 2023 Shareholders' Meeting. It was then rejected in a shareholder vote. A different proposal by NLPC was rejected in 2024, after Mr. Flaherty spoke in favor of it at the 2024 annual meeting, without incident.[1]

For these reasons, as explained further below, the Complaint should be dismissed with prejudice.

---

[1] *See* Josh Funk, *Warren Buffett's Company Rejects Proposals, But It Faces a Lawsuit Over How It Handled One Last Year*, A.P. News (May 4, 2024), available at https://apnews.com/article/berkshire-hathaway-warren-buffett-shareholder-meeting-lawsuit-c8a06d66256f902157e15b5ea717a9c7 ("Flaherty was allowed to make his case that Berkshire should produce a report on the risks of doing business in China, before the proposal was summarily rejected.") (last visited June 28, 2024).

## BACKGROUND

### A.   The Parties[2]

Plaintiff NLPC is a "shareholder activis[t]" (Doc. No. 1 ("Compl.") at 3, ¶ 11) that beneficially owned 17 shares of Berkshire Hathaway Class B common stock.   Plaintiff Peter Flaherty is the "Chairman of NLPC" (*id.* at 3, ¶ 12), and Plaintiff James Tovar is Mr. Flaherty's "assistant" (*id.*at 5, ¶¶ 21, 23).   Neither Mr. Flaherty nor Mr. Tovar is alleged to be a shareholder of Berkshire Hathaway.

Defendant Berkshire Hathaway is a Delaware corporation with its headquarters in Nebraska.   Compl. at 2, ¶ 7.   Defendant Warren Buffett is the Chairman and Chief Executive Officer of Berkshire Hathaway.   *Id.* at 4, ¶ 16.   Plaintiffs allege that Defendants John Does 1 and 2 (the "John Does") were "plain clothes" security guards "hired by Berkshire Hathaway."   *Id.* at 6, ¶ 28.

### B.   NLPC's Independent Chair Shareholder Proposal

Before Berkshire Hathaway's 2022 shareholders' meeting, NLPC submitted a shareholder proposal calling for an independent director—rather than the CEO—to be chair of the Board of Directors of Berkshire Hathaway.   Compl. at 3, ¶¶ 13–14.   Mr. Flaherty spoke in favor of NLPC's shareholder proposal at Berkshire Hathaway's 2022 shareholders' meeting "without incident." Compl. at 3, ¶ 14.

---

[2]     The facts in this Brief are taken from the well-pled allegations in the Complaint, which Defendants assume are true solely for the purpose of this Motion, and "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Podraza v. Whiting*, 790 F.3d 828, 833 (8th Cir. 2015) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

In October 2022, NLPC submitted a similar shareholder proposal. *See id.* at 3, ¶ 13. Berkshire Hathaway included that proposal in its March 17, 2023 Proxy Statement. *See id.* at 4, ¶ 15; *see* Ex. A (Proxy Statement for Annual Meeting of Shareholders ("Proxy")), at 17.[3]

## C.    **Plaintiffs' Presentation at the 2023 Shareholders' Meeting**

Regulations promulgated by the U.S. Securities and Exchange Commission state that a shareholder who submits a proposal for consideration at an annual shareholder meeting "must attend the meeting to present the proposal." 17 C.F.R. §§ 240.14a-8(h)(1). Mr. Flaherty and Mr. Tovar attended the 2023 Shareholders' Meeting—a ticketed event at the arena. Compl. at 5, ¶¶ 21–23. Mr. Flaherty was warned to stay "on topic" during his presentation. *Id.* at 5, ¶ 23. Mr. Flaherty opened his remarks by stating that "[i]f [Berkshire Hathaway] had an independent chair, the company would be less identified with Mr. Buffett's political activities." *See* Ex. B (Transcript of 2023 Meeting ("Transcript")) at Tr. 277:9–11.[4] Mr. Flaherty did not discuss the concept of an "independent chair" again. Instead, he disclaimed the "virus" of "philanthropy," *id.* at Tr. 277:18–19, and criticized the Gates Foundation for "bankroll[ing] . . . critical race theory" and "offer[ing] a gender identity toolbox," *id.* at Tr. 277:18–25.

---

[3]    The Proxy (Exhibit A), which includes the Independent Chair Proposal, is a "matter[] of public and administrative record referenced in the [C]omplaint," and accordingly "incorporated by reference in the pleadings." *Moratzka v. Morris (In re Senior Cottages of Am., LLC)*, 482 F.3d 997, 999 n.4 (8th Cir. 2007). *See* Compl. at 4, ¶ 15 (Proxy); 4, ¶¶ 15–18 (Notice).

[4]    Plaintiffs allege the contents of—and cite video recordings of—Mr. Flaherty's presentation at the 2023 Shareholders' Meeting. Compl. at 6–7, ¶¶ 25–28. As a result, this Court can take notice of the official transcript of his presentation. *See*, *e.g.*, *In re CV Scis., Inc.*, No. 2:18-cv-01602-JAD-BNW, 2019 WL 6718086, at *2 n.23 (D. Nev. Dec. 10, 2019) (finding a transcript incorporated by reference when "the amended complaint alleges the content of the call transcript" and "the defendants' statements during the call"); *Cullars-Doty v. City of St. Paul*, No. 21-cv-94 (NEB/ECW), 2021 WL 5868202, at *12 (D. Minn. Dec. 10, 2021) ("[T]he transcript of the 911 call is necessarily embraced by the pleadings given that the Complaint and proposed amended complaint refer to the call."). Moreover, the events at the 2023 Shareholders Meeting form the basis of Plaintiffs' claims. Compl. at 7–13, ¶¶ 32–92.

Mr. Flaherty was again warned to "stay 'on topic.'"  Compl. at 6, ¶ 25.  Mr. Flaherty appealed to Mr. Buffett to continue speaking.  *Id.* at 6, ¶ 25.  After Mr. Buffett let him continue, *id.* at 6, ¶ 26, Mr. Flaherty began to make personal remarks about Bill Gates, another Berkshire Hathaway shareholder.  Specifically, he stated that "[w]e know how much Bill Gates cares about children.  He met and traveled with Jeffrey Epstein many times . . . after Epstein was convicted of sex crimes."  Ex. B (Transcript), at Tr. 278:12–17.  Mr. Buffett attempted to remind Mr. Flaherty not to make "attacks on an individual."  *Id.* at Tr. 278:23–24.

Plaintiffs allege that two "plain clothes security guards"—John Does 1 and 2—then told Mr. Flaherty to "leave or he would be arrested."  Compl. at 6–7, ¶ 28.  Mr. Flaherty told the guard that "Mr. Buffett is in the chair and he will rule, not you."  *Id.*  Mr. Buffett concluded that Mr. Flaherty had "crossed the boundary" by making personal attacks and asked Mr. Flaherty to be removed from the room.  Ex. B (Transcript), at Tr. 279:3–6; Compl. at 7, ¶ 29 ("Mr. Buffett . . . ordered that Mr. Flaherty be ejected.").  After Mr. Flaherty refused to leave, one of the John Does waved over a uniformed police officer who was already "nearby."  *Id.* at 7, ¶ 30.  Consistent with Omaha Police Department policies, the John Doe again asked Mr. Flaherty to leave in the presence of the police officer.[5]  After Mr. Flaherty again refused to leave, the officer "grabbed Mr. Flaherty by the arm, advised him that he was under arrest, and led him from the arena."  Compl. at 7, ¶ 30.  Mr. Tovar attempted to "follow Mr. Flaherty" but a John Doe "prevented him from doing so."  *Id.* at 7, ¶ 30.

---

[5]     Mr. Flaherty posted videos of the footage on his YouTube channel.  *See* Peter Flaherty, *Peter Flaherty Arrested During Berkshire Meeting for Mention of Bill Gates & Jeffrey Epstein*, available at YouTube (May 11, 2023), https://www.youtube.com/watch?v=ErHXIrDNz14 (last visited June 28, 2024).

The police officer detained Mr. Flaherty in an office for "under an hour" and thereafter transported Mr. Flaherty to the Omaha Police Department. Compl. at 7, ¶ 31. Mr. Flaherty was charged with a violation of Omaha's Request to Leave provision—which, as its name suggests, makes it a misdemeanor to refuse to leave private property on request. *Id.* at 7, ¶ 31. He was permitted to leave after posting bail of $250. *Id.* at 7, 10, ¶¶ 31, 60. He alleges the "charges were terminated" in his "favor." *Id.* at 10, ¶ 61. In all, he was detained for three hours. *Id.* at 7, ¶ 31.

### D.    Plaintiffs File Suit

Plaintiffs filed this lawsuit on May 3, 2024 against Defendants Berkshire Hathaway, Mr. Buffett, and the two security guards, John Does 1 and 2.[6] The Complaint asserts eight intentional tort claims based on the conduct of either the John Doe security guards or the uniformed police officer at the 2023 Shareholders' Meeting. While the allegations are far from clear, Mr. Flaherty appears to allege that when the John Does asked him to leave, they committed assault (Count I). Compl. at 7–8, ¶¶ 32–39. He further alleges that, when the John Does waved over a police officer already present in the room, they committed malicious prosecution (Count V). *Id.* at 10, ¶¶ 59–64. During his arrest, Mr. Flaherty allegedly was battered (Count II) because he was "touched" by John Doe 1 in an unexplained manner (*id.* at 8, ¶¶ 41–42), and "grabbed" by a law enforcement officer on the arm (*id.* at 7, ¶ 30). Mr. Flaherty further alleges that because he was arrested, Defendants are liable for false imprisonment (Count IV). *Id.* at 10, ¶ 54–58.[7] He also seeks "nominal damages" via a claim for "intentional infliction of emotional distress" (Count III).

---

[6]    Notably, Mr. Flaherty attended the Berkshire Hathaway shareholder meeting on May 4, 2024—the day after he filed suit. He presented a shareholder proposal at that meeting without incident. *See* Funk, note 1, *supra.*

[7]    Mr. Flaherty appears to assert each of these claims against both Berkshire Hathaway and Warren Buffett, except for battery (Count II), which is not asserted against Mr. Buffett. *See* Compl. at 8–9, ¶¶ 40–48.

*Id.* at 9, ¶ 49–53.  When Mr. Flaherty was being arrested, Mr. Tovar, his assistant, was "prevented" from following him.  Based on that one fact, he brings claims for assault (Count VI), battery (Count VII), and false imprisonment (Count VIII, mislabeled as Count IV).[8]

Finally, Plaintiffs Flaherty and NLPC assert a promissory estoppel claim (Count IX) against Defendants.  *Id.* at 12–13, ¶¶ 85–92.  Plaintiffs allege that Defendants "induced" Plaintiffs to attend the 2023 Shareholders' Meeting (*id.* at 13, ¶ 89) to present the Independent Chair Proposal.  And Plaintiffs allege that the promise was breached because Mr. Flaherty was not permitted to talk about Jeffrey Epstein.  *See id.* at 6, 13, ¶¶ 26; 91.  Plaintiffs ask for an injunction requiring Berkshire Hathaway to post Plaintiffs' "full remarks" on the Berkshire Hathaway website for "two years."  *Id.* at 13, ¶ 92.

## **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Corrado v. Life Inv'rs Ins. Co. of Am*., 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Zink v. Lombardi*, 783 F.3d 1089, 1114 (8th Cir. 2015) (*quoting Iqbal*, 556 U.S. at 678).

---

[8]     Mr. Tovar alleges that both Berkshire Hathaway and Mr. Buffett are liable for assault (Count VI) and Berkshire Hathaway is liable for battery (Count VII); he does not appear to seek damages against Berkshire Hathaway or Mr. Buffett for false imprisonment (Count VIII) (identifying only John Doe 1 or 2).

## ARGUMENT

**I.    Mr. Flaherty's Intentional Tort Claims Fail as a Matter of Law**

In Nebraska, property owners, or those in possession of property, have the right to request unwanted guests to leave.  *See Kenney v. Barna*, 215 Neb. 863, 865 (1983) ("A trespasser is a person who enters or *remains upon premises* in possession of another *without the express or implied consent* of the possessor.") (emphasis added); *Cowperthwait v. Brown*, 82 Neb. 327, 335 (1908) (holding that an invited guest was permitted to remain until the party in possession "ordered him to leave").  Omaha has an aptly named "Request to Leave" ordinance, which prohibits "any person" from "refus[ing] to leave the property of another after being notified to leave by the owner, occupant or person in control thereof, or by his agent."  Omaha Mun. Code § 20-155.

The Omaha Police Department has adopted specific policies related to enforcement of the Request to Leave ordinance. [9]  As relevant here, the "person in control" of a "private property" or a "commercial establishment" may order another person to leave the property.  *See* Omaha Police Department Policies, at 5.  If that person fails to leave, the property owner "may request police to have the trespasser removed."  *Id.*  Thereafter, the responding officer will "witness the person in control of the property once more order the trespasser to leave."  *Id.*  If the trespasser still "fails to leave after being ordered to do so in the presence of the police officer, the trespasser shall be arrested and charged with a violation" of the Request to Leave ordinance.  *Id.*

---

[9]     *See* Trespassing Policy, Omaha Police Department, Section VI: Request to Leave, available at https://public.powerdms.com/OPDEP1/documents/854044 (last visited June 28, 2024) (confirming that if the "trespassing person has been ordered to leave" and "failed to do so," the "property owner/agent may request police to have the trespasser removed").

Here, Mr. Flaherty pleads his own violation of Nebraska trespass law and Defendants'[10] and the Police Department's compliance with applicable law and policies. Nonetheless, he attempts to hold Defendants liable for five intentional tort claims. As explained further below, all five of these intentional tort claims fail as a matter of law.

### A.    A Request That Mr. Flaherty Leave a Private Event Due to His Misconduct Is Not Assault as a Matter of Law (Count I Against Berkshire Hathaway)

To plead a claim for assault in Nebraska, Mr. Flaherty must plead facts establishing: 1) "an attempt [of] force" or "threats," 2) "made in a menacing manner," 3) "with intent to inflict bodily injury upon another," and 4) "with present apparent ability to give effect to the attempt, without requiring that the one assaulted be subjected to any actual physical injury or contact." *Reavis v. Slominski*, 250 Neb. 711, 717 (1996) (quoting *Bergman v. Anderson*, 226 Neb. 333, 336 (1987)). The Complaint contains no facts supporting these elements.

After Mr. Flaherty disrupted the 2023 Annual Meeting, the John Does (allegedly as agents of Berkshire Hathaway and Mr. Buffett) requested that he leave voluntarily. Compl. at 6–7, ¶ 28. Mr. Flaherty claims that request is an "assault" under Nebraska law (Count I). A request to leave or be arrested is not a "threat" sufficient to support a claim for assault. It is an accurate statement of the law. The Request to Leave ordinance makes Mr. Flaherty's refusal to leave upon request a crime. *See also State v. Goering*, Nos. A-93-1128, A-93-1129, A-93-1130, A-93-1133, 1994 WL 585763, at *5 (Neb. Ct. App. Oct. 25, 1994) (affirming conviction under this ordinance). Nebraska law similarly designates refusal to leave as trespass. *See, e.g., Maynard v. State*, 81 Neb. 301, 313 (1908) ("[W]hen ordered to depart, he, failing to do so, became a trespasser, and deceased had the

---

[10]    For purposes of this Motion only, Defendants will assume—but in no way concede—that John Does 1 and 2 are the agents of Defendant Berkshire Hathaway for the few facts pled in the Complaint.

right to eject him.").  The John Does did not commit "assault" by giving Mr. Flaherty a fair warning about the legal consequences of his continued refusal to leave.

As to the remaining elements of Count I, Mr. Flaherty does not (and could not) plead a "threat" of "bodily harm" in a "menacing manner," or that Defendants intended to harm him in any way.  Nor does Mr. Flaherty explain how the conduct was offensive at all.  *See*, *e.g.*, *Hires v. City of Mishawaka*, No. 3:22-CV-130 DRL-MGG, 2022 WL 16745031, at *5 (N.D. Ind. Nov. 4, 2022) (holding that plaintiff "hasn't stated a plausible claim for either assault or battery" when the "complaint is devoid of any factual allegations as to the nature of . . . the harmful or offensive conduct").

Stripped of all recitals copied from the Restatement of Torts, Mr. Flaherty's real complaint is about his purported right (unrecognized by law) to peddle his theories on "dark money machine[s]," "gender identity toolbox[es]," the "virus" of "philanthropy," and alleged "sex crimes."  Ex. B (Transcript), at Tr. 279:2, 277:23-24, 277:19, 278:17.  But that purported right, even if it were grounded in law or logic, is irrelevant here.  Mr. Flaherty was the subject of a lawful request to leave someone else's property.  Such a request is not an assault as a matter of law.

If Mr. Flaherty believes he was not afforded his rights as a Berkshire Hathaway shareholder (or a representative of one), he can continue to pursue the meritless complaint he filed with the U.S. Securities and Exchange Commission over six months ago based on the same "facts" alleged here.[11]  *See generally* 17 C.F.R. § 240.14a-8 (requiring shareholders to follow all applicable "procedures" for "attending the meeting and/or presenting [the] proposal").  But, Mr. Flaherty's incorrect view of "shareholder rights" does not override well-established Nebraska and Omaha

---

[11]     The complaint NLPC filed with the Securities and Exchange Commission in December 2023 is available on NLPC's webpage: https://nlpc.org/wp-content/uploads/2023/12/NLPC-SEC-Complaint-12-19-23.pdf (last visited June 28, 2024).

law concerning property owners' rights to eject or have trespassers removed.  Nor does it give Mr. Flaherty license to ignore instructions of Omaha police officers and basic decorum at an event held in Omaha.

At bottom, Mr. Flaherty was not threatened with an offensive contact.  He was asked to leave a meeting in Omaha due to his offensive conduct.  That is not assault as a matter of well-established Nebraska law, and as a result, Count I must be dismissed.

**B.      Requesting Police Assistance to Remove a Trespasser Is Not Battery, False Imprisonment, or Malicious Prosecution (Counts III, IV and V Against Mr. Buffett and Berkshire Hathaway)**

After Mr. Flaherty refused to leave the shareholders' meeting, he became a trespasser as a matter of law.  *See State v. Wright*, 235 Neb. 564, 566 (1990) (affirming criminal conviction for trespass when Defendant "refused to leave when requested to do so, and had to be forcibly removed from the residence").  John Doe asked for police assistance to help remove Mr. Flaherty.  *See* Compl. at 7, ¶ 30.  Now, before this Court, Mr. Flaherty tries to turn a security guard's request for police assistance into claims for false imprisonment, battery, and malicious prosecution.  Each fails as a matter of law.

**1.      A Police Officer's Independent Decision to Arrest a Trespasser Does Not Render Defendants Liable for False Imprisonment (Count IV)**

To plead a claim for false imprisonment, Mr. Flaherty must plead facts establishing that Defendants caused "the unlawful restraint against his or her will of an individual's personal liberty."  *Holmes v. Crossroads Joint Venture*, 262 Neb. 98, 118 (2001).  Mr. Flaherty's false imprisonment claim fails because he admits he was arrested for trespassing after a police officer witnessed him trespassing.

*First*, Mr. Flaherty has failed to plead facts showing his imprisonment was unlawful.  *See Huskinson v. Vanderheiden*, 197 Neb. 739, 742 (1977) ("In order to attach liability to appellants it

was necessary to prove the unlawfulness of the arrest."). As relevant here, an imprisonment is not unlawful if the police had a reasonable basis to arrest Mr. Flaherty. *See id.* at 742–43. The Complaint expressly pleads that Mr. Flaherty was asked to leave (Compl. at 6–7, ¶ 28), refused to leave, and was charged with violating the Request to Leave Ordinance (*id.* at 7, ¶ 31). Accordingly, it is "undisputed" that Mr. Flaherty was "notified by the representative of the [property owner] and by the police to leave," and he "did not leave." *Goering*, 1994 WL 585763, at *5. As a result, Mr. Flaherty "violated the ordinance." *Id.* This establishes the reasonable basis for the police to arrest Mr. Flaherty. *Id.*

*Second*, the Complaint does not plausibly allege that any Defendant *caused* Mr. Flaherty's arrest. For a private citizen to be liable for an arrest made by a police officer, he must have "procure[d] an unlawful arrest and detention" by "affirmative direction, persuasion, or request." *Huskinson*, 197 Neb. at 742. However, the Nebraska Supreme Court has emphasized that a defendant cannot be liable for false imprisonment when the police officer exercises his "independent judgment" based on information provided by the defendant. *Edgar v. Omaha Pub. Power Dis*t., 166 Neb. 452, 460 (1958). Here, the facts pled show Mr. Flaherty was arrested based on the independent judgment of the arresting police officer. The Omaha Police Department requires the arresting officer to witness the trespasser refuse to leave in response to a request to leave before making any arrest. *See* Omaha Police Department Policy, at 5. At bottom, Mr. Flaherty asks this Court to turn asking for police assistance, itself, into a tort. But the Nebraska Supreme Court has cautioned against tort liability that "destroy[s] with fear and threats the recognized right and duty of the public to give information to law enforcement officers, which is a most effective instrument in the administration of criminal justice." *Edgar*, 166 Neb. at 463.

### 2. Defendants Are Not Liable for Battery for Asking the Police to Eject a Trespasser (Count III)

To state a claim for battery under Nebraska law, Mr. Flaherty must plead facts about "[a] harmful contact intentionally done." *Barber v. State*, 316 Neb. 398, 407 (2024). The Complaint only pleads that the Omaha Police officer and John Doe 1 non-forcefully walked Mr. Flaherty out of the arena by the arm. *See* Compl. at 7, ¶ 30; *see also* note 5, *supra* (Mr. Flaherty's video footage of the "battery"). That is neither battery as a matter of law, nor harmful as pled. As a result, Count III must be dismissed.

*First*, John Doe 1 and the Omaha Police Officer had a legal privilege to make the contacts alleged in the Complaint. It is black letter law that a police officer may use reasonable force to effect an arrest. *See Phillips v. Liberty Mut. Ins. Co.*, 293 Neb. 123, 134 (2016) ("Tort law recognizes that the use of force . . . is 'privileged' if it is reasonable and it is used for the purpose of effecting a lawful arrest") (citation omitted). Similarly, the Nebraska Supreme Court has long since recognized that property owners have a "legal privilege" to "eject trespassers." *See*, *e.g.*, *Maynard*, 81 Neb. at 313 ("[W]hen ordered to depart, he, failing to do so, became a trespasser, and deceased had the right to eject him."). Under either standard, the legal privilege affords Defendants a right "to commit what would otherwise be a battery." *Dion v. City of Omaha*, 311 Neb. 522, 550 (2022) ("A privileged act is generally defined as one that would ordinarily be tortious, but which, under the circumstances, does not subject the actor to liability."). Here, both standards apply. The police officer had authority to "grab the arrestee . . . when effectuating an arrest." *See*, *e.g.*, *Kasiah v. Crowd Sys.*, 915 F.3d 1179, 1184 (8th Cir. 2019). Similarly, once Mr. Flaherty became a trespasser, Defendants had a right to remove him with force if necessary. As a result, both the "grabbed arm" by the police officer (Compl. at 8, ¶ 45) and the unexplained "touch" by John Doe 1 (Compl. at 8, ¶ 41) are privileged contacts, not batteries.

*Second*, Mr. Flaherty has failed to plead any facts suggesting the contacts were harmful or how they were offensive. Indeed, the Complaint does not even conclusorily assert that the police officer's touch was offensive. And it pleads no facts about how any "touch" was "offensive." *See*, *e.g.*, *Daniels v. Kaiser Found. Hosps.*, No. SACV 24-00022-CJC (JDEx), 2024 U.S. Dist. LEXIS 73074, at *20 (C.D. Cal. Apr. 19, 2024) (dismissing assault and battery claims because "[p]laintiff does not explain what about Defendants' actions would have been offensive"). As a result, Count III should be dismissed.

### 3.    Asking for Police Assistance Is Not Malicious Prosecution (Count V)

To plead malicious prosecution under Nebraska law, Mr. Flaherty must plead facts establishing: "(1) the commencement or prosecution of the proceeding against him or her; (2) its legal causation by the present defendant; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage, conforming to legal standards, resulting to the plaintiff." *Holmes*, 262 Neb. at 116–17. The Complaint fails to plead sufficient facts establishing each of these elements.

*First*, Defendants did not cause the commencement or prosecution of any proceeding against Mr. Flaherty. As explained above, when an Omaha police officer witnessed Mr. Flaherty trespassing, the officer arrested Mr. Flaherty based on the exercise of his independent judgment. No fact alleged in the Complaint plausibly shows that Defendants caused "criminal proceedings" to be "commenced against him" by having Mr. Flaherty arrested. Compl. at 9, ¶ 51.

Mr. Flaherty's allegation that a "man who never identified himself" provided Mr. Flaherty with a "Report on the Issuance of a Ban and Bar Letter," *id.* at 7, ¶ 31, does not support a claim that Defendants caused criminal proceedings to be commenced against Mr. Flaherty, either. The Complaint does not plead (even on information or belief) that Defendants issued the letter (which

is neither described in nor attached to the Complaint) or that it is a "proceeding" subject to a malicious prosecution claim.

*Second*, Mr. Flaherty alleges that after his arrest, he posted bail—a fee that most innocent arrestees receive back—and that the "criminal proceedings" were "terminated" in his favor. *Id.* at 10, ¶ 61. Mr. Flaherty has not alleged a bona fide termination in his favor showing that he was "innocent of wrongdoing." *Acton v. Acton*, No. A-04-147, 2006 WL 908872, at *7 (Neb. Ct. App. Apr. 11, 2006). The Complaint does not allege any facts about how, or why, the charges were terminated. Indeed, the Complaint claims Mr. Flaherty paid bail, but suggests that the Omaha Police Department and municipal court system did not see fit to return the bail. *See* Compl. at 10, ¶ 60 (describing bail fee), 10, ¶ 63 (alleging "monetary damages"). That alone suggests that the Omaha Police Department and the courts did not find him innocent of all charges. *See Acton*, 2006 WL 908872, at *7 (finding that the dismissal of charges upon agreement to pay court costs was not "bona fide termination" in the plaintiff's favor). At most, the Complaint suggests that the prosecutor has a catch-and-release policy for first time offending trespassers, not that the prosecutor made a determination on the merits that Mr. Flaherty was innocent.

*Third*, Mr. Flaherty has failed to plead the "absence of probable cause" required to state a claim for malicious prosecution. As explained above, *see* Section I.B.1, the Complaint "makes clear" that Mr. Flaherty "did not leave" when told to leave and, accordingly, "establishe[s] that the officers had probable cause, or arguable probable cause, to arrest Plaintiff for trespass." *Gibson v. Hadzic*, No. 4:22-CV-00163-SPM, 2023 WL 8697785, at *2 (E.D. Mo. Dec. 15, 2023) (holding that complaint "makes clear" that plaintiff "did not leave" when told to leave).

Finally, Mr. Flaherty does not plead any facts suggesting actual "malice"—which, at the very least, requires that the Defendants "initiated the prosecution primarily for an improper

16

purpose." *Acton*, 2006 WL 908872, at *6.  Nothing in the Complaint suggests malice or improper motive.  The Complaint does not plead that Defendants pressed charges, filed any formal complaint, or took any other negative action against Mr. Flaherty as soon as his trespass ended. Nor does the Complaint suggest that Defendants sought to bar Mr. Flaherty from attending future shareholder meetings or presenting any other shareholder proposal.  In fact, Mr. Flaherty was allowed to present at the 2024 shareholder meeting, even after he trespassed in 2023.  *See* note 1, *supra*.

### C.    Mr. Flaherty's Intentional Infliction of Emotional Distress Claim Fails as a Matter of Law (Count IV)

Mr. Flaherty seeks "nominal" damages to recover from the "emotional distress" caused by Defendants' "outrageous" conduct.  Compl. at 9, ¶ 50.  "A plaintiff bringing a claim of intentional infliction of emotional distress under Nebraska law must clear 'a high hurdle.'"  *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1068 (8th Cir. 2021) (citation omitted).  Plaintiff must plead three elements: "(1) [t]hat there has been intentional or reckless conduct; (2) [t]hat the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community; and (3) [t]hat the conduct caused emotional distress so severe that no reasonable person should be expected to endure it."  *Schieffer v. Cath. Archdiocese of Omaha*, 244 Neb. 715 (1993) (internal citations omitted).

Mr. Flaherty pleads that the conduct of the Defendants was "outrageous and intended to cause Peter T. Flaherty emotional distress," that he "suffered emotional distress," and that the Defendants acted "willfully, wantonly, maliciously, oppressively, and with conscious disregard" for Mr. Flaherty's "rights."  Compl. at 9,  ¶¶ 49–53.  Mr. Flaherty's conclusory allegations do not satisfy any of the three prongs.  As the Eighth Circuit has explained, clearing the "high hurdle" set

by Nebraska law for outrageous conduct "requires showing more than that that defendant 'threatened' or 'insulted' the plaintiff." *Richardson*, 2 F.4th at 1068. But Plaintiff fails to do even that. A bare allegation that unspecified conduct was outrageous is insufficient as a matter of law. *Hoffert v. Westendorf*, 854 F. App'x 93, 95 (8th Cir. 2021) ("Hoffert failed to make any non-conclusory allegations indicating that Wendling acted with the requisite level of intent, or that any defendants' conduct was outrageous."). In any event, Mr. Flaherty's hijacking the microphone at the shareholders' meeting for an inflammatory monologue is more outrageous than any conduct alleged in the Complaint. At most, Plaintiff has alleged the John Does asked a police officer for help. That is not outrageous. And that certainly is insufficient to state a claim for intentional infliction of emotional distress against Defendants. *See Richardson*, 2 F.4th at 1068–69 (holding that alleged wrongful termination, discipline, breach of contract, and "threats of physical violence" were insufficient to state a claim under Nebraska law).

Further, Mr. Flaherty has failed to plead that he suffered severe emotional distress. Even assuming Mr. Flaherty is as uniquely sensitive as the Complaint implies, he must still plead facts establishing that his "distress [is] so extreme as to be disabling." *Warner v. Warner*, No. 8:22-CV-377, 2024 WL 1013898, at *4 (D. Neb. Mar. 8, 2024). That typically is satisfied "by demonstrating persistent physical or mental symptoms that impact one's daily life." *Id.*[12] The "barebones" pleading of "emotional distress" does not carry his burden, and, as a result, Count III must be dismissed. *Id.*

---

[12]     The fact that Mr. Flaherty attended the 2024 shareholder meeting—the day after filing this suit—to present his proposal undermines any "emotional distress" alleged here. *See* note 1, *supra*.

## II.     Mr. Tovar's Intentional Tort Claims Fail as a Matter of Law (Counts IV, V, VI Against Mr. Buffett and Berkshire Hathaway) [13]

Plaintiff Tovar appears in the facts of the Complaint only three times.  He "planned to accompany Mr. Flaherty" to the 2023 Shareholders' Meeting.  Compl. at 5, ¶ 21.  He, in fact, "accompanied" Mr. Flaherty to the meeting.  *Id.* at 5, ¶ 23.  And he "tried to" accompany Mr. Flaherty to his arrest and detention, although one of the John Does "prevented him from doing so."  *Id.* at 7, ¶ 30.  The Complaint alleges that Mr. Tovar's separation from Mr. Flaherty, somehow, renders Defendants liable for assault, battery, and false imprisonment.  These claims are baseless as they are unsupported by any well-pled fact.

Mr. Tovar was allegedly "physically prevented" from accompanying Mr. Flaherty during his arrest (*id.* at 7, ¶ 30) and, for reasons not explained in the Complaint, his separation from Mr. Flaherty felt like being "confined without his consent" (*id.* at 12, ¶ 84).  (Count VI).  One of the John Does stood in front of Mr. Tovar for a few seconds. [14]  Mr. Tovar does not plead that he was confined at all.  As pled, he was free to sit down, leave the arena, or go to his hotel room.  He was *not* free to interfere with Mr. Flaherty's arrest.  Nor was he free to accompany, or follow, Mr. Flaherty during his arrest and detention.  An alleged right to voluntarily accompany a detainee is certainly novel, but it is not a false imprisonment claim as a matter of law.  *Cf. Dangberg v. Sears, Roebuck & Co.*, 198 Neb. 234, 238 (1977) (holding that false imprisonment requires "placing" the plaintiff "in a position" where he may not go where he "may lawfully go").

Mr. Tovar brings an assault claim (Count IV) to recover from an assault that either never happened or was omitted from the Complaint.  To plead the "menacing" "threats" made with

---

[13]     Count VI is not pled against Defendants Berkshire Hathaway or Mr. Buffett.  Defendants move to dismiss Count VI out of abundance of caution.

[14]     *See* note 5, *supra* (showing video footage of the alleged "false imprisonment" of Mr. Tovar).

"intent to inflict bodily injury" required for assault, *Reavis*, 250 Neb. 711 at 717, Mr. Tovar alleges that the John Does "threatened to harm and touch" him "in a harmful or offensive manner." Compl. at 11, ¶ 69.  He alleges nothing about the "threat," the "harm," or the "offense."  The Complaint does not even allege that the John Does spoke to Mr. Tovar.  Federal courts routinely dismiss assault claims untethered from any well-pled fact. *See Bissonette v. Luskey*, No. 02-335 ADM/AJB, 2003 WL 1700466, at *3 (D. Minn. Mar. 27, 2003) (holding that an "assault claim must fail" where "Plaintiff has alleged no direct threats and has not identified when she feared imminent physical harm"); *Pinkston v. Bd. of Educ.*, No. 19 CV 6477, 2023 WL 6392302, at *6 (N.D. Ill. Oct. 2, 2023) (holding that a "[p]laintiff has not plausibly stated a claim for assault" when the "allegations comprise nothing more than a recital of the elements of an assault claim supported by mere conclusory statements").

Mr. Tovar's alleged battery (Count VII) similarly happened somewhere off screen.  He pleads that one of the John Does (although he does not know which one) touched him at the direction of "unknown officers or agents of Berkshire Hathaway." Compl. at 12, ¶ 75.  Although any "reasonable person would have been offended by the touching" (Compl. at 12, ¶ 78), the contact is not pled in the Complaint.  Nor does Mr. Tovar provide any fact suggesting how the touching was offensive.  *See*, *e.g.*, *Nasuti v. Holm*, No. 3:22-cv-00025-RGE-SBJ, 2022 WL 18779981, at *5 (S.D. Iowa Oct. 31, 2022) ("Furthermore, Nasuti alleges no facts to support the inference Holm "intended to inflict a harmful or offensive" contact upon Nasuti's body."); *Bell v. Dow Chem. Co.*, No. 21-326-SDD-SDJ, 2022 WL 1221639, at *28 (M.D. La. Mar. 11, 2022) ("Plaintiffs do not plead any facts in support of their conclusory allegations of the elements of battery.").  In short, the conclusory and fleeting allegations supporting Counts IV, V, and VI are insufficient as a matter of law.

### III.   Plaintiffs Flaherty and NLPC Have Failed to State a Claim for Promissory Estoppel (Count IX Against Mr. Buffett and Berkshire Hathaway)

"Promissory estoppel is based on a party's detrimental reliance on another party's promise that would otherwise be an unenforceable contract." *Page v. Siedband*, No. A-19-121, 2023 WL 7499741, at *9 (Neb. Ct. App. Nov. 14, 2023).   To plead a promissory estoppel claim under Nebraska law, a plaintiff must show "(1) a promise that the promisor should have reasonably expected to induce the plaintiff's action or forbearance, (2) the promise did in fact induce the plaintiff's action or forbearance, and (3) injustice can only be avoided by enforcing the promise." *Weitz Co., LLC v. Hands, Inc*., 294 Neb. 215, 226 (2016).

*First*, Plaintiffs have not alleged that they reasonably relied on a promise that their wild conspiracy theories and personal attacks that led to their ejection from the arena would be allowed to be aired at the 2023 Shareholders' Meeting.   Nor have they alleged a promise that they would be published on Berkshire Hathaway's website (which is the relief that they seek).   No such promises were ever made.

*Second*, even assuming that Defendants "promised" that NLPC and Mr. Flaherty could present a corporate governance proposal at the 2023 Shareholders' Meeting, the Complaint does not plead facts showing Defendants breached that promise.   Plaintiffs received a fair opportunity to present that proposal.   Mr. Buffett is even alleged to have given Mr. Flaherty a second chance to make that corporate governance proposal after he went off track.   *See*, *e.g.*, Compl. at 13, ¶ 90. But Mr. Flaherty did not want to present the shareholder proposal.   He wanted 4 minutes and 10 seconds to state whatever was on his mind.   That was never promised (or alleged to have been promised).   Plaintiffs cannot sue to enforce a promise that was never made.   *See Harrington v. Strong*, 363 F. Supp. 3d 984, 1011 (D. Neb. 2019) ("[B]ased on the allegations in the Amended Complaint, there is no promise to enforce and no injustice to avoid. Plaintiffs' Fifth Cause of

Action for breach of contract and, alternatively, for promissory estoppel will, therefore, be dismissed, without prejudice.").

*Third*, Plaintiffs were not and could not have been "induced" to incur expense to appear at the 2023 Shareholders' Meeting based on a promise by Mr. Buffett or Berkshire Hathaway.  Under SEC regulations, a shareholder (like NLPC) who submits a shareholder proposal for consideration at an annual shareholder meeting "must attend the meeting to present the proposal."  17 C.F.R. §§ 240.14a-8(h)(1).  Accordingly, by choosing to make a shareholder proposal in advance of the 2023 Shareholders' Meeting, Plaintiffs voluntarily assumed the burden of appearing at that meeting.  Plaintiffs could not have "change[d] their position" based on anything Defendants allegedly promised, and "therefore, no estoppel exists."  *Lovell v. Kearney*, 200 Neb. 478, 480 (1978).

## IV.   Mr. Flaherty Does Not Plead Facts That Plausibly Show Mr. Buffett Is Liable on Any Claim

Mr. Flaherty alleges that Mr. Buffett is directly and/or vicariously liable for each of the intentional tort claims (except battery).  But the John Does (security guards), not Mr. Buffett, committed the only "tortious" conduct conclusorily alleged in the Complaint.  And, there are no facts alleged that plausibly show that the John Does are Mr. Buffett's agents.  Rather, the Complaint alleges that Berkshire Hathaway, not Mr. Buffett, hired the John Does.  Compl. at 6–7, ¶ 28.  As a result, the intentional tort claims against Mr. Buffett must be dismissed for this alternative reason.  *See Willstrop v. Prince Mktg. LLC*, No. 8:17CV350, 2019 WL 11851138, at *3 (D. Neb. June 28, 2019) ("To survive a motion to dismiss, a complaint alleging agency must plead facts that, if proven, establish the existence of an agency relationship."); *see also Dangberg*, 198 Neb. at 239 (holding that false imprisonment claim fails where "[i]t is impossible to draw an inference that Berry suggested that plaintiff be apprehended").

## CONCLUSION

For the foregoing reasons, Nebraska law mandates dismissal of the Complaint with prejudice—thereby precluding a trespasser from subjecting Berkshire Hathaway and Mr. Buffett to litigation based solely on Plaintiffs' attention-seeking antics and Mr. Flaherty's trespass—and any other further relief the Court deems just and proper.

Dated: June 28, 2024

Respectfully submitted,

BERKSHIRE HATHAWAY INC.; WARREN BUFFETT

 /s/ Tara A. Stingley_____
Tara A. Stingley (#23243)
Isaiah J. Frohling (#26786)
CLINE WILLIAMS WRIGHT JOHNSON & OLDFATHER, LLP
12910 Pierce St., #200
Omaha, NE 68144
(402) 955-2441
tstingley@clinewilliams.com
ifrohling@clinewilliams.com

*Of Counsel*

Bryce L. Friedman, Admitted *Pro Hac Vice*
Meredith Karp, Admitted *Pro Hac Vice*
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
T: (212) 455-2000
bfriedman@stblaw.com
meredith.karp@stblaw.com

*Attorneys for Defendants Berkshire Hathaway Inc. and Warren Buffett*

23

## **CERTIFICATE OF COMPLIANCE**

I, Tara A. Stingley, hereby certify that this Brief complies with the limits set forth in NE. Civ. R. 7.1(d). Further, based on the word count function on Microsoft Office 365's Microsoft Word's word processing software, applied to include all text, including the caption, headings, footnotes, and quotations, I certify this Brief contains 8,295 words.

/s/ Tara A. Stingley

**CERTIFICATE OF SERVICE**

I, Tara A. Stingley, hereby certify I electronically filed the foregoing document on June 28, 2024, with the Clerk of the United States District Court for the District of Nebraska using the CM/ECF system, which sent an electronic copy to all registered case participants, including the following:

> Thomas J. Monaghan
> Stuart J. Dornan
> Dornan Troia Howard Breitkreutz
> Dahlquist & Klein, PC LLO
> 1403 Farnam Street, Suite 232
> Omaha, Nebraska 68102
> tom@dltlawyers.com
> stu@dltlawyers.com

/s/ Tara A. Stingley