IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

NATIONAL LEGAL AND POLICY CENTER,
PETER T. FLAHERTY, and JAMES "JAMIE"
R. TOVAR,

Plaintiffs,

vs.

BERKSHIRE HATHAWAY INC., WARREN
BUFFETT, JOHN DOE 1, and JOHN DOE 2,

Defendants.

NO. 8:24-CV-162

MEMORANDUM AND ORDER ON THE
BERKSHIRE DEFENDANTS' MOTION
TO DISMISS AND MOTION TO STRIKE

In May 2023, Berkshire Hathaway Inc. (Berkshire Hathaway) held its annual shareholders meeting in Omaha, Nebraska. Filing 1 at 5 (¶ 22). Plaintiffs Peter T. Flaherty and James "Jamie" R. Tovar attended the meeting as representatives of plaintiff National Legal and Policy Center (NLPC). Filing 1 at 5 (¶ 21, 23). NLPC, Flaherty, and Tovar (collectively, Plaintiffs) filed this suit after Flaherty was removed from the meeting while he was presenting a shareholder proposal on NLPC's behalf. Filing 1 at 7 (¶ 30); 3 (¶ 12). Plaintiffs have brought various intentional tort claims and a promissory estoppel claim against Berkshire Hathaway and Warren Buffett (collectively, the Berkshire Defendants) and John Doe 1 and John Doe 2 (collectively, the Doe Defendants). Filing 1. The Berkshire Defendants moved to dismiss all claims against them for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Filing 20. The Berkshire Defendants also

moved to strike Plaintiffs' Declaration of Peter T. Flaherty. Filing 28. For the reasons below, the Court grants both Motions.

## I.  INTRODUCTION

The Court draws the factual background from the nonconclusory facts alleged in Plaintiffs' Complaint, Filing 1, as well as from "materials necessarily embraced by the pleadings" where appropriate and where the parties have invited the Court to do so. *LeMay v. Mays*, 18 F.4th 283, 289 (8th Cir. 2021) (internal quotation marks omitted) (quoting *Buckley v. Hennepin Cnty.*, 9 F.4th 757, 760 (8th Cir. 2021)).

### A.  Factual Background

Plaintiffs allege that NLPC is a nonprofit organization that "exposes corruption in public companies[ ] and addresses corporate governance and policy issues through shareholder activism." Filing 1 at 3 (¶ 10). Plaintiff Flaherty is NLPC's Chairman, while plaintiff Tovar is a "senior staff member" of NLPC. Filing 1 at 3 (¶ 12); 5 (¶ 21). NLPC is a shareholder in defendant Berkshire Hathaway Inc., and defendant Warren Buffett is the Chief Executive Officer and Chairman of Berkshire Hathaway. Filing 1 at 3 (¶ 13–14); Filing 22-2 at 21. Prior to Berkshire Hathaway's May 2023 annual shareholders meeting, NLPC submitted a shareholder proposal titled "Request for Board of Directors to Adopt Policy for Independent Chair." Filing 1 at 3 (¶ 13). NLPC's proposal— which was included in the proxy statement sent to Berkshire Hathaway shareholders in advance of the annual meeting—suggested that Berkshire Hathaway's board of directors adopt a policy that "two separate people hold the office of the Chairman and the office of the CEO." Filing 1 at 4 (¶ 15); Filing 22-2 at 21. To support its proposal for an independent chair, NLPC submitted a Notice of Exempt Solicitation to the Securities and Exchange Commission (SEC) in April 2023. Filing 1 at 4 (¶ 15).

On May 1, 2023, NLPC received an email from Berkshire Hathaway personnel instructing NLPC that on the day of the annual meeting, "You will have three minutes to present the proposal. However, we will be somewhat flexible as to time should you run over a minute or so." Filing 1 at 4–5 (¶ 20). According to Plaintiffs, Flaherty planned to give a four minute and ten second presentation on NLPC's behalf. Filing 1 at 5 (¶ 21). The day after NLPC received Berkshire Hathaway's emailed instructions, NLPC received two credentials for admission to the annual meeting. Filing 1 at 5 (¶ 21). On May 6, 2023, Berkshire Hathaway held its annual shareholders meeting at the CHI Health Center in Omaha, Nebraska. Filing 1 at 5 (¶ 22). Both Flaherty and Tovar attended the meeting—Flaherty to deliver NLPC's shareholder proposal and Tovar as Flaherty's "assistant." Filing 1 at 5 (¶ 22–23). When Flaherty arrived at the microphone zone prior to his presentation, Cathy Woollums, a Berkshire Hathaway officer, allegedly informed Flaherty that the "three minute limitation on his statement would be strictly enforced" and warned him "that he should stay 'on topic.'" Filing 1 at 5 (¶ 23).

Plaintiffs make the following allegations regarding Flaherty's presentation of NLPC's shareholder proposal. When it was NLPC's turn to present its proposal, Flaherty began to deliver his prepared remarks, an advanced copy of which had been published on NLPC's website a day earlier. Filing 1 at 5 (¶ 21), 6 (¶ 25). One minute and eight seconds into the presentation, Woollums approached Flaherty at the microphone and told him to stay "on topic." Filing 1 at 6 (¶ 25). Flaherty asked Buffett for permission to continue speaking. Filing 1 at 6 (¶ 25). After Buffett told Flaherty, "You may continue but under the three-minute limitation," Flaherty resumed his presentation one minute and twenty-eight seconds after he first began. Filing 1 at 6 (¶ 27). Flaherty then started to speak about "Bill Gates's relationship with Jeffrey Epstein." Filing 1 at 6 (¶ 26). One minute and fifty-four seconds into Flaherty's presentation, Buffett "attempted to talk over Mr. Flaherty and

3

appeared to give direction to other persons in the hall." Filing 1 at 6 (¶ 26). Two minutes and four seconds after Flaherty began his presentation, his "mic went dead, although [he] did not know it at the time." Filing 1 at 6 (¶ 26).

After Flaherty's microphone "went dead," two unidentified men whom Plaintiffs believe were "plain clothes security guards" hired by Berkshire Hathaway—John Doe 1 and John Doe 2— stood in front of Flaherty and told him to leave or else face arrest. Filing 1 at 6–7 (¶ 28). After Flaherty indicated that he would not leave without finishing his presentation, Buffett "and/or one or more of his agents" ordered that Flaherty "be ejected" from the meeting. Filing 1 at 7 (¶ 29). A John Doe "summoned" a nearby uniformed Omaha police officer—who is not a party to this case—and requested that the officer arrest Flaherty. Filing 1 at 7 (¶ 30). The officer "grabbed" Flaherty's arm, informed him he was under arrest, and removed him from the meeting. Filing 1 at 7 (¶ 30). One of the John Does "physically prevented" Tovar from following Flaherty out of the meeting. Filing 1 at 7 (¶ 30). Flaherty was then issued a "Report on the Issuance of a Ban and Bar Letter" and transported to the Douglas County Corrections Center where he was "searched, handcuffed, fingerprinted, photographed, and charged with a Request to Leave, a violation akin to criminal trespass." Filing 1 at 7 (¶ 31).

### B. Procedural Background

Plaintiffs filed their Complaint on May 3, 2024, naming Berkshire Hathaway, Warren Buffett, John Doe 1, and John Doe 2 as defendants. Filing 1. In total, Plaintiffs allege nine counts against the Berkshire Defendants and Doe Defendants. Filing 1. Plaintiff Flaherty brings five intentional tort claims: Count I (assault), Count II (battery), Count III (intentional infliction of emotional distress), Count IV (false imprisonment), and Count V (malicious prosecution). Filing 1 at 7–10. Plaintiff Tovar brings three intentional tort claims: Count VI (assault), Count VII (battery),

4

and Count VIII[1] (false imprisonment). Filing 1 at 10–12. NLPC and Flaherty also bring a promissory estoppel claim, Count IX. Filing 1 at 12–13.

On June 28, 2024, the Berkshire Defendants filed a Motion to Dismiss all claims against them pursuant to Rule 12(b)(6). Filing 20. The Berkshire Defendants and Plaintiffs each submitted an index of evidence supporting their briefs on this Motion. Filing 22; Filing 26. Plaintiffs' index included a Declaration of Peter T. Flaherty dated August 19, 2024. Filing 26-3. Along with their Reply to Plaintiffs' Brief opposing the Motion to Dismiss, the Berkshire Defendants filed a Motion to Strike the Declaration of Peter T. Flaherty on September 9, 2024. Filing 28.

## II. ANALYSIS

### A. Preliminary Matter

The Court notes at the outset that Plaintiffs' Complaint raises some jurisdictional concerns. Because the Court "ha[s] an independent obligation to determine whether subject-matter jurisdiction exists before proceeding to the merits," the Court begins with a brief discussion of its jurisdiction over this case. *Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 609 (8th Cir. 2018). The Court is first concerned with Plaintiffs' allegation that the Court has jurisdiction over this matter "pursuant to 28 U.S.C. § 1332(d) because: (a) there is complete diversity of citizenship between Plaintiff[s] and Defendants; and (b) the amount in controversy exceeds $75,000 exclusive of costs and interests." Filing 1 at 1 (¶ 2). Section 1332(d) is the Class Action Fairness Act, but Plaintiffs do not plead a class action. As a result, the Court presumes Plaintiffs intended to invoke the Court's original diversity jurisdiction pursuant to § 1332(a)(1).

---

[1] In their Complaint, Plaintiffs label Tovar's false imprisonment claim "Count IV," even though they also label Flaherty's false imprisonment claim "Count IV." The Court will refer to Tovar's false imprisonment claim as "Count VIII."

Assuming Plaintiffs seek to invoke the Court's original diversity jurisdiction, the Court is next concerned with whether Plaintiffs have properly alleged an amount in controversy exceeding the jurisdictional minimum of $75,000. Determining the amount in controversy is generally a "straightforward task . . . because the plaintiff is the master of the complaint." *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009). In other words, "the amount claimed by [the] plaintiff ordinarily controls in determining whether jurisdiction lies in the federal court." *Zunamon v. Brown*, 418 F.2d 883, 885 (8th Cir. 1969). However, when a plaintiff does "not allege a specific amount in controversy in his complaint, the amount in controversy depends upon the value of the relief [the plaintiff] seeks." *Clark v. Matthews Intern. Corp.*, 639 F.3d 391, 397 (8th Cir. 2011). "[T]he complaint will be dismissed if it appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *Scottsdale Ins. Co. v. Universal Crop Protection Alliance, LLC*, 620 F.3d 926, 931 (8th Cir. 2010) (internal quotation marks and citation omitted).

Here, Plaintiffs do not allege a specific amount in controversy. *See generally* Filing 1. Instead, they make only the conclusory allegation that the amount in controversy exceeds $75,000 exclusive of interest and costs. Filing 1 at 13 (Prayer for Relief). Plaintiffs' failure to allege a specific amount of damages unnecessarily complicates an otherwise "straightforward task," as "conclusory allegations do not provide an adequate basis for determining this [C]ourt's jurisdiction." *Kennedy, Pier & Knoff LLP v. Green*, No. 8:10CV024, 2010 WL 376844, at *2 (D. Neb. Jan. 25, 2010). Plaintiffs' barebones Complaint further complicates the issue, making it difficult for the Court to measure "the value to [Plaintiffs] of the right sought to be enforced." *Am. Fam. Mut. Ins. Co. v. Vein Ctrs. for Excellence, Inc.*, 912 F.3d 1076, 1081 (8th Cir. 2019) (internal quotation marks and citation omitted). Despite these complications and the Court's concerns, the Court cannot conclude to a legal certainty that Plaintiffs' claim is really for less than the jurisdictional amount. *Scottsdale Ins. Co.*,

6

620 F.3d at 931 (holding that diversity jurisdiction was proper where "it did not appear to a legal certainty that the amount in controversy was less" than what was alleged). Accordingly, the Court turns to the Berkshire Defendants' Rule 12(b)(6) Motion to Dismiss.

### B.  Rule 12(b)(6) Standards

Plaintiffs bring nine counts in their Complaint: Flaherty's five intentional tort claims (Counts I–V), Tovar's three intentional tort claims (Counts VI–VIII), and NLPC and Flaherty's single promissory estoppel claim (Count IX). Filing 1. Because Plaintiffs do not clearly identify the defendants against whom each count is alleged, it is not obvious from the Complaint that Plaintiffs intended to bring all nine claims against the Berkshire Defendants. Filing 1. However, "out of abundance of caution" the Berkshire Defendants nonetheless seek dismissal of all nine counts and include arguments against each count in their briefing. Filing 21 at 24. To the extent Plaintiffs base their claims on the conduct of the Doe Defendants, the Court assumes without deciding for the purpose of ruling on this Motion that Plaintiffs have sufficiently alleged facts showing that the Doe Defendants acted as agents of the Berkshire Defendants. Accordingly, the Court will determine whether Plaintiffs have stated all nine claims against the Berkshire Defendants under Rule 12(b)(6) standards.

The typical grounds for Rule 12(b)(6) motions are the insufficiency of the factual allegations offered to state claims. To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, "'threadbare recitals of the elements of a cause of action' cannot survive a [Rule 12(b)(6)] motion to dismiss." *Du Bois v. Bd. of Regents of Univ. of Minnesota*, 987 F.3d 1199, 1205 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, as the Eighth Circuit Court of Appeals has explained, "A claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's

nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 680-83). To put it another way, a court "must determine whether a plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (quoting *Braden v. WalMart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). Thus, "[a] claim is plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Christopherson v. Bushner,* 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). In contrast, "'[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id.* (internal quotation marks and citations omitted). The Eighth Circuit Court of Appeals has cautioned that "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594.

In ruling on a Rule 12(b)(6) motion, a court must "accept 'the facts alleged in the complaint as true and draw[ ] all reasonable inferences in favor of the nonmovant.'" *Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (quoting *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)). On the other hand, "[m]ere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable." *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1068 (8th Cir. 2021) (internal quotation marks and citations omitted). A court also need not accept a pleader's "legal conclusions drawn from the facts." *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 755 (8th Cir. 2021).

Rule 12(b)(6) also permits dismissal when a claim is not cognizable under applicable law. *See, e.g., Couzens v. Donohue*, 854 F.3d 508, 517 (8th Cir. 2017) (dismissal was appropriate where Missouri did not recognize a claim for false light invasion of privacy); *Thomas v. Bd. of Regents of Univ. of Nebraska*, No. 4:20CV3081, 2022 WL 1491102, at *18 (D. Neb. May 11, 2022) (agreeing with defendant that the plaintiffs had failed to state a claim, because a disparate-impact claim is not cognizable under the Equal Protection Clause); *Freeney v. Galvin*, No. 8:19CV557, 2020 WL 229996, at *2 (D. Neb. Jan. 15, 2020) (finding the plaintiff failed to state a § 1983 claim against the manager of his private place of employment because such a claim is not cognizable where a private person is not a state actor or engaged in joint action with the state or its agents). In such cases, the plaintiff failed to state a claim that was legally cognizable as opposed to factually plausible.

In deciding a Rule 12(b)(6) motion, "[c]ourts may [also] consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022) (internal quotation marks and citations omitted). However, the Court cannot consider factual allegations that were not included in the Complaint or in materials embraced by the pleadings. *See Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) ("While [the plaintiff] presented additional facts in his oppositions to the motion to dismiss[,] . . . those factual allegations were not included in his amended complaint and, thus, cannot be considered on a motion to dismiss.").

Plaintiffs submitted a Declaration of Peter T. Flaherty, Filing 26-3, along with their Brief opposing the Berkshire Defendants' Motion to Dismiss. The Declaration contains factual allegations that are not included in the Complaint but are offered to oppose dismissal. Filing 26-3. Because such allegations are not present in the Complaint, the Court will not consider the Declaration or any

factual allegations drawn from it in ruling on the Berkshire Defendants' Motion to Dismiss. *See Warner v. Warner*, No. 8:22CV377, 2024 WL 1013898, at *4 (D. Neb. Mar. 8, 2024) ("While [the plaintiff] provides additional factual support for her claim in opposing dismissal, the Court cannot consider those unalleged circumstances in ruling on the motion to dismiss."). Accordingly, to the extent the Berkshire Defendants request that the Court disregard the Declaration, Filing 29 at 4, the Court grants the Berkshire Defendants' Motion to Strike the Declaration of Peter T. Flaherty, Filing 28.

### C. Flaherty's Intentional Tort Claims

The Court first determines whether Flaherty's five intentional tort claims survive the Berkshire Defendants' Motion to Dismiss. In this section, the Court addresses the following claims: Count I (assault), Count II (battery), Count III (intentional infliction of emotional distress), Count IV (false imprisonment), and Count V (malicious prosecution).

#### 1. The Parties' Arguments

The Berkshire Defendants argue that Flaherty's intentional tort claims fail as a matter of law because Flaherty became a trespasser at the 2023 Berkshire Hathaway shareholders meeting. Filing 21 at 7. In their Complaint, Plaintiffs allege that after Flaherty began discussing Bill Gates and Jeffrey Epstein, the Doe Defendants told Flaherty to leave the shareholders meeting or else face arrest. Filing 1 at 6–7 (¶¶ 26–28). Plaintiffs further allege that Flaherty did not leave the meeting upon the Doe Defendants' request. Filing 1 at 6–7 (¶ 28). According to the Berkshire Defendants, in making these allegations Plaintiffs plead Flaherty's own violation of Nebraska trespass law—a violation that the Berkshire Defendants contend is fatal to Flaherty's intentional tort claims. Filing 21 at 15. The Berkshire Defendants argue that because Flaherty was a trespasser by his own allegation, the Berkshire Defendants were entitled to exercise their rights as "a person in control of

property" and eject him from the shareholders meeting. Filing 21 at 7, 14. In other words, the Berkshire Defendants assert that Flaherty's status as a trespasser gave them the legal privilege to eject him with force if necessary, meaning the Berkshire Defendants engaged in privileged actions—not tortious ones—when their alleged agents removed Flaherty from the shareholders meeting. Filing 27 at 8. As a result, the Berkshire Defendants contend that Flaherty's five intentional tort claims must fail as a matter of law. Filing 21 at 14.

Plaintiffs deny that Flaherty pleads his own trespass, but they admit that he was asked to leave the shareholders meeting and "remained due to the reasonable belief that he could stay on the premises to finish his remarks in support of NLPC's shareholder proposal or at least to stay for the rest of the meeting to hear the remaining shareholder presentations." Filing 25 at 25. According to Plaintiffs, rather than a trespasser Flaherty was a "special invitee" who reasonably believed he could remain as an invitee despite the Doe Defendants' request that he leave the meeting. Filing 25 at 25. Plaintiffs also argue that they have sufficiently pleaded Flaherty's intentional tort claims as a matter of law because "trespass is a criminal charge" and Flaherty "was never tried or convicted of any trespass." Filing 25 at 15.

2.  *Applicable Standards*

Under Nebraska law, a trespasser is "a person who enters or remains upon premises in possession of another without the express or implied consent of the possessor." *Guzman v. Barth*, 552 N.W.2d 299, 301 (Neb. 1996). A party in possession of property has the right to eject a trespasser from the property using reasonable force. *Reed v. Chicago, B. & Q.R. Co.*, 120 N.W. 442, 444 (Neb. 1909) ("[The plaintiff] was a mere trespasser when he entered the caboose after having been refused passage on the train, and the defendant and its employ[ees] were authorized to use such reasonable force as was necessary to eject plaintiff from the train."). *See also Maynard v. State*, 116

11

N.W. 53, 58 (Neb. 1908) ("But, when ordered to depart, [the plaintiff], failing to do so, became a trespasser, and [the] deceased had the right to eject him."); *Chicago, B. & Q.R. Co. v. White*, 103 N.W. 661, 662 (Neb. 1905) ("[The plaintiff] was a trespasser, and the defendant had a right to eject him by force under proper circumstances.").

These principles remain viable today, as reflected in the Restatement (Second) of Torts. *See McDonald Apiary, LLC v. Starrh Bees, Inc.*, No. 8:14-CV-351, 2016 WL 5921069, at *4 (D. Neb. Oct. 10, 2016) ("Nebraska generally adheres to the Restatement (Second) of Torts with respect to trespass."). Comment a to § 890 of the Restatement (Second) of Torts states, "In some cases the law creates a privilege for the enforcement of a right against another who has no legally protected interests affected by the exercise of the privilege as when the owner of land is given a privilege to eject a trespasser upon his land. . . ." "A privileged act is generally defined as one that would ordinarily be tortious, but which, under the circumstances, does not subject the actor to liability." *Dion v. City of Omaha*, 973 N.W.2d 666, 687 (Neb. 2022). "Ordinarily, the existence of a justification is a question of fact that the defendant must prove." *Noble Systems Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008). "If an affirmative defense such as a privilege is apparent on the face of the complaint, however, that privilege can provide the basis for dismissal under Rule 12(b)(6)." *Id.* Although relevant case law "require[s] the defense to be apparent on the face of the complaint, this means simply that the district court is limited to the materials properly before it on a motion to dismiss, which may include public records and materials embraced by the complaint." *Id.*

### 3. Application

As previously discussed, Plaintiffs allege in their Complaint that Flaherty remained at Berkshire Hathaway's annual shareholders meeting after the Doe Defendants—the alleged agents

of the Berkshire Defendants—told him to leave. Filing 1 at 6–7 (¶ 28). Plaintiffs do not dispute that the Berkshire Defendants maintained legal possession of the CHI Health Center for the purpose of the shareholders meeting. *See generally* Filing 25. *See also Lambert v. Holmberg*, 712 N.W.2d 268, 273–74 (Neb. 2006) (noting that under the law of trespass, a party is a property owner if the party "ha[s] title to or legal possession of the land"). Thus, it is apparent on the face of the Complaint that Flaherty became a trespasser when he "remained upon premises in possession of another without the express or implied consent of the possessor." *Kenney v. Barna*, 341 N.W.2d 901, 902 (Neb. 1983). Consequently, it is also apparent on the face of the Complaint that the Berkshire Defendants had the right to eject Flaherty by force. *See Maynard*, 116 N.W. at 60 (explaining that after the plaintiff had been ordered to depart from the deceased's property, "[the plaintiff] had no right to remain longer, and [the] deceased had the right to eject him, using such force only as was necessary"). For the reasons below, the Court finds that the Berkshire Defendants' privilege to eject Flaherty from the meeting is ultimately fatal to all of Flaherty's intentional tort claims.

      a.   Plaintiffs Fail to State Flaherty's Assault Claim

To state a claim for assault under Nebraska law, Plaintiffs must plead facts showing "a 'wrongful offer or attempt with force or threats, made in a menacing manner, with intent to inflict bodily injury upon another with present apparent ability to give effect to the attempt.'" *Bergman by Harre v. Anderson*, 411 N.W.2d 336, 336 (Neb. 1987) (quoting *Crouter v. Rogers*, 227 N.W.2d 845, 847 (Neb. 1975)). Plaintiffs are not required to show "that the one assaulted [was] subjected to any actual physical injury or contact." *Id.* Even still, Plaintiffs have not pleaded facts sufficient to state Flaherty's assault claim against the Berkshire Defendants.

Plaintiffs argue that the Berkshire Defendants menacingly threatened Flaherty "with the impending use of physical force" when the Doe Defendants—the alleged agents of the Berkshire

13

Defendants—warned Flaherty that he would be arrested if he did not leave the shareholders meeting and subsequently summoned a police officer to arrest him. Filing 25 at 16. However, the Court has already explained that two things are apparent on the face of Plaintiffs' Complaint: first, Flaherty became a trespasser when he remained at the meeting after he was told to leave and second, the Berkshire Defendants had the right to eject him from the meeting. Whether initiated by the Berkshire Defendants or their alleged Doe agents, the warning and request for police assistance must be viewed in light of Flaherty's self-alleged trespass. Viewing the alleged actions in such light, the Court cannot reasonably infer that the Berkshire Defendants did anything more than exercise their legal privilege to eject a trespasser from the shareholders meeting. Accordingly, Flaherty's trespass defeats his assault claim and Count I is dismissed.

####        b.    Plaintiffs Fail to State Flaherty's Battery Claim

To state a claim for battery under Nebraska law, Plaintiffs must plead facts demonstrating "'an actual infliction' of an unconsented injury upon or unconsented contact with another." *Bergman*, 411 N.W.2d at 336 (quoting *Newman v. Christensen*, 31 N.W.2d 417 (Neb. 1948)). Plaintiffs argue their allegation that an Omaha police officer "grabbed" Flaherty's arm without consent is sufficient to state Flaherty's battery claim against the Berkshire Defendants. Filing 25 at 20. The Court does not agree. As Plaintiffs themselves admit, Flaherty's battery claim turns on the alleged conduct of a police officer. Filing 25 at 20–21. This is a problem for Plaintiffs because the officer is not a defendant in this case and because Plaintiffs' Complaint fails to allege that the officer acted as an agent of any defendant. *See generally* Filing 1. Plaintiffs also apparently recognize this problem, as they argue for the first time in their Brief opposing the Berkshire Defendants' Motion to Dismiss that an agency relationship existed between the Berkshire Defendants, as principals, and the officer, as agent. Filing 25 at 12–13. Although Plaintiffs make this argument vigorously and at

14

times confusingly,[2] their Complaint contains no factual allegations supporting it. At most, Plaintiffs allege that a "uniformed Omaha policeman" was "summoned" by one of the Doe Defendants. Filing 1 at 7 (¶ 30). The Court concludes that this allegation supports the reasonable inference that the officer was acting in a law enforcement capacity during the shareholders meeting given an officer must use the authority given to him or her pursuant to his or her public position to effectuate an arrest, take a person to the police station, and book them. Moreover, Plaintiffs do not cite and the Court does not find any authority indicating that an agency relationship forms between a person who asks for police assistance and the officer who responds. Accordingly, Plaintiffs fail to state Flaherty's battery claim to the extent it is based on the conduct of the nondefendant officer.

To the extent Flaherty's battery claim is based on the allegation that he was "touched" by John Doe 1, the Court notes that Flaherty's trespass is again relevant. Filing 1 at 8 (¶ 41). Because Flaherty became a trespasser when he refused to leave the shareholders meeting, the Berkshire Defendants "were authorized to use such reasonable force as was necessary to eject" Flaherty from the meeting. *Reed*, 120 N.W. at 444. Plaintiffs' Complaint does not describe the nature of John Doe 1's "touch," but it is clear from the video of Flaherty's arrest—a video embraced by the Complaint— that neither Doe Defendant touched Flaherty's arm for longer than five seconds. *See Noble*, 543 F.3d at 983 (indicating that a court may examine materials embraced by the complaint in determining whether a privilege is apparent on the face of the complaint). Under Nebraska trespass law, a property possessor's privilege to eject a trespasser by reasonable force includes "tak[ing] him by the arm or coat sleeve and lead[ing] him quietly from the [property]." *Reed*, 120 N.W. at 444.

---

[2] "Here, the Omaha officer is a third party who believed Mr. Flaherty was being arrested because of the order or manifestations from Mr. Buffett or his agents to have Mr. Flaherty removed from the Shareholders' meeting. Therefore, the Omaha officer was acting pursuant to the apparent authority of the security guards who, in turn, were acting as agents of Mr. Buffett and Berkshire." Filing 25 at 12–13.

Viewed in light of Flaherty's trespass, John Doe 1's "touch" is a privileged act "which, under the circumstances, does not subject the actor to liability." *Dion*, 973 N.W.2d at 687. Accordingly, Flaherty's trespass prevents him from bringing a battery claim under these circumstances and Count II is dismissed.

### c.  Plaintiffs Fail to State Flaherty's Claim for Intentional Infliction of Emotional Distress

To bring a claim for intentional infliction of emotional distress under Nebraska law, Plaintiffs must plead facts showing the following:

> (1) that there has been intentional or reckless conduct, (2) that the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community, and (3) that the conduct caused emotional distress so severe that no reasonable person should be expected to endure it.

*Heitzman v. Thompson*, 705 N.W.2d 426, 430–31 (Neb. 2005). "Whether conduct is extreme and outrageous is judged on an objective standard based on all the facts and circumstances of a particular case." *Id.* at 431. To survive the Berkshire Defendants' Rule 12(b)(6) Motion, then, Plaintiffs must allege facts showing that the Berkshire Defendants—or their alleged agents, the Doe Defendants—engaged in extreme and outrageous conduct. *Id.* at 430. This is a "high hurdle," as "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities that result from living in society do not rise to the level of extreme and outrageous conduct." *Id.* Plaintiffs do not clear this "high hurdle."

Plaintiffs claim that the Berkshire Defendants and Doe Defendants engaged in conduct that was "outrageous and intended to cause Peter T. Flaherty emotional distress," but most of Plaintiffs' factual allegations concern the conduct of the nondefendant officer. Filing 1 at 7 (¶ 30–31). Based on the Court's review of the Complaint, the only factual allegations regarding any defendant's

16

conduct are the following three assertions: (1) the Doe Defendants stood in front of Flaherty and told him to leave or else face arrest, Filing 1 at 6 (¶ 28); (2) "Mr. Buffett and/or one or more of his agents ordered that Mr. Flaherty be ejected from the hall," Filing 1 at 7 (¶ 29); and (3) one of the Doe Defendants "summoned a uniformed Omaha policeman who was nearby and requested that he arrest Mr. Flaherty," Filing 1 at 7 (¶ 30). These allegations are not "such that when heard, an average member of the community would resent the actor and exclaim, 'Outrageous!'" *Heitzman*, 705 N.W.2d at 431. Moreover, "[a] defendant is never liable where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." *Paasch v. Brown*, 227 N.W.2d 402, 404 (Neb. 1975). Because Flaherty was a trespasser, the Berkshire Defendants did no more than insist upon their legal right to eject him. *Maynard*, 116 N.W. at 58. Accordingly, Flaherty's trespass defeats his intentional infliction of emotional distress claim and Count III is dismissed.

### d.    Plaintiffs Fail to State Flaherty's Claim for False Imprisonment

To state a claim for false imprisonment under Nebraska law, Plaintiffs must allege facts showing "the unlawful restraint against his or her will of an individual's personal liberty." *Holmes v. Crossroads Joint Venture*, 629 N.W.2d 511, 527 (Neb. 2001). "Any intentional conduct that results in the placing of a person in a position where he or she cannot exercise his or her will in going where he or she may lawfully go may constitute false imprisonment." *Id.* at 527–28. Plaintiffs argue that they have "sufficiently pled facts allowing the Court to reasonably infer that the Omaha officer who arrested Mr. Flaherty did so unlawfully by not forming his own reasonable belief that Mr. Flaherty was trespassing." Filing 25 at 24. According to Plaintiffs, the officer's arrest of Flaherty constituted an "unlawful restraint" of Flaherty. Filing 25 at 24.

Here, Plaintiffs again argue that the Berkshire Defendants should be liable for the nondefendant officer's conduct based on an unalleged agency relationship. Filing 25 at 26. Although this agency argument is no more persuasive now than in previous contexts, the Court does acknowledge that there are some circumstances under which a private citizen may be liable for false imprisonment committed by a responding police officer. "A private citizen who by affirmative direction, persuasion, or request procures an unlawful arrest and detention of another is liable for false imprisonment." *Huskinson v. Vanderheiden*, 251 N.W.2d 144, 146 (Neb. 1977). This liability only attaches to a private citizen when the arrest and detention were unlawful. *Id.*

Even if the Court construes Flaherty's false imprisonment claim against the Berkshire Defendants as an allegation of private citizen liability, Plaintiffs have not pleaded facts showing that the officer unlawfully arrested Flaherty. In Nebraska, a police officer "may lawfully arrest and detain any person violating any law of this state or any legal ordinance of any city or incorporated village of this state." *Holmes*, 629 N.W.2d at 528 (citing Neb. Rev. Stat. § 29-401, which states in relevant part, "Every . . . police officer . . . shall arrest and detain any person violating any law of this state or any legal ordinance of any city or incorporated village until a legal warrant can be obtained"). The Berkshire Defendants argue that along with pleading Flaherty's violation of Nebraska trespass law, Plaintiffs' Complaint pleads Flaherty's violation of § 20-155 of the Omaha Municipal Code. Filing 21 at 14–15. Section 20-155 is titled "Request to leave" and provides, "It shall be unlawful for any person to fail or refuse to leave the property of another person after being notified to do so by the owner, occupant or person in control thereof, or by his agent." Omaha Mun. Code § 20-155.

As the Court has already explained, it is apparent on the face of the Complaint that Flaherty remained at the shareholders meeting after the Doe Defendants—the alleged agents of the Berkshire

18

Defendants—told him to leave. Thus, it is also apparent on the face of the Complaint that Flaherty violated § 20-155. *See State v. Goering*, Nos. A-93-1128, A-93-1129, A-93-1130, A-93-1133, 1994 WL 585763, at *5 (Neb. Ct. App. 1994) ("It is undisputed in the record that the defendants were notified by the representative of the medical center and by the police to leave. They did not leave; therefore they violated the ordinance."). When a Doe Defendant summoned a nearby police officer and requested that the officer arrest Flaherty, Flaherty was already a trespasser, and he had already violated § 20-155. Because Flaherty had violated a legal ordinance of a Nebraska city, the officer could lawfully arrest him under Neb. Rev. Stat. § 29-401. *See Holmes*, 629 N.W.2d at 528. Accordingly, Flaherty's trespass defeats his false imprisonment claim and Count IV is dismissed.

      e.   Plaintiffs Fail to State Flaherty's Claim for Malicious Prosecution

To bring a claim for malicious prosecution under Nebraska law, Plaintiffs must allege facts showing the following:

> (1) the commencement or prosecution of the proceeding against him or her; (2) its legal causation by the present defendant; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage, conforming to legal standards, resulting to the plaintiff.

*Holmes*, 629 N.W.2d at 526. According to Plaintiffs, the Berkshire Defendants—through the acts of their alleged agents, the Doe Defendants—caused the commencement of a trespass proceeding against Flaherty by asking the officer to arrest Flaherty. Filing 25 at 27. Plaintiffs allege that after Flaherty was arrested at the shareholders meeting, he was "booked[,] criminal charges were filed against him for a form of criminal trespass[,] and he had to post bail in the amount of $250." Filing 1 at 10 (¶ 60).

Plaintiffs do not allege that any defendant arrested, booked, or filed criminal charges against Flaherty—these actions were taken by the nondefendant officer and presumably by the Omaha

19

Police Department. Filing 1 at 10 (¶¶ 59–64). Instead, Plaintiffs allege that the Berkshire Defendants "ha[d] him arrested." Filing 1 at 10 (¶ 59). Under Nebraska law, "an informant [who] knowingly gives false or misleading information or otherwise directs or counsels officials in such a way so as to actively persuade and induce the officer's decision . . . may still be held liable for malicious prosecution." *Holmes*, 629 N.W.2d at 526–27. However, "a person who supplies information to prosecuting authorities is not liable for the prosecutors' action so long as any ensuing prosecution is left entirely to the officials' discretion." *McKinney v. Okoye*, 842 N.W.2d 581, 592 (Neb. 2014). "The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings." *Id.* (internal quotation marks, brackets, and citation omitted).

In light of Flaherty's self-pleaded trespass and violation of § 20-155, the Court finds that Plaintiffs have not alleged sufficient facts showing the Berkshire Defendants caused the commencement or prosecution of a proceeding against Flaherty. Rather, the facts alleged in Plaintiffs' Complaint show that the nondefendant officer followed Nebraska law by arresting Flaherty for remaining at the shareholders meeting after the Doe Defendants told him to leave. *See* Neb. Rev. Stat. §29-401; Omaha Mun. Code § 20-155. Plaintiffs do not allege facts showing that any defendant "actively persuaded or induced" the officer's decision to arrest Flaherty, and they do not allege that any defendant provided "false or misleading" information to the officer. *McKinney*, 842 N.W.2d at 592. Accordingly, Flaherty's trespass and violation of § 20-155 defeats his malicious prosecution claim and Count V is dismissed.

In sum, the Court dismisses Counts I through V because Plaintiffs fail to state any of Flaherty's intentional tort claims in light of his self-alleged trespass.

20

### D.  Tovar's Intentional Tort Claims

The Court now addresses the sufficiency of Tovar's three intentional tort claims: Count VI (assault), Count VII (battery), and Count VIII (false imprisonment). Tovar's claims must meet the same Rule 12(b)(6) standards set out in Section II.B and applied to Flaherty's claims. Plaintiffs do not meet this standard for any of Tovar's intentional tort claims.

Plaintiffs argue that the Court can reasonably infer that Tovar is entitled to relief on all three of his claims, Filing 25 at 30–31; however, the Berkshire Defendants point out that Tovar is mentioned only three times in the factual allegations section of Plaintiffs' Complaint. Filing 21 at 24. In their Complaint, Plaintiffs allege that (1) Tovar planned to accompany Flaherty to the shareholders meeting, Filing 1 at 5 (¶ 21); (2) Tovar did accompany Flaherty to the meeting, Filing 1 at 5 (¶ 23); and (3) Tovar "attempted to follow Mr. Flaherty as he was removed from the arena but was physically prevented from doing so by one of the two unidentified security guards," Filing 1 at 7 (¶ 30). Absent any additional factual allegations in the Complaint, Plaintiffs base Tovar's three claims on "mere legal conclusions and recitations of the elements of the causes of action." *Glick*, 944 F.3d at 717.

Plaintiffs claim that "John Does 1 or 2 threatened to harm or touch Mr. Tovar in a harmful or offensive matter," but they plead no facts showing that any threat occurred. *See Bergman*, 411 N.W.2d at 336 (listing the elements of assault, including the requirement of showing "a wrongful offer or attempt with force or threats" (internal quotation marks and citation omitted)). Accordingly, Tovar's assault claim, Count VI, is dismissed. Plaintiffs similarly claim that one of the Doe Defendants "touched [Tovar] with the intent to harm or offend him," but Plaintiffs do not allege any facts describing the "touch." *See Bergman*, 411 N.W.2d at 336 (explaining that battery requires "an actual infliction of an unconsented injury upon or unconsented contact with another" (internal

quotation marks omitted)). Absent any additional facts, Plaintiffs' allegation that a Doe Defendant "physically prevented" Tovar from following Flaherty is an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Kulkay*, 847 F.3d at 642 (internal quotation marks and citation omitted). As a result, Tovar's battery claim, Count VII, is dismissed.

Plaintiffs also claim that "Defendants John Doe 1 or 2 caused Mr. Tovar to be confined [to the CHI Health Center arena] without his consent," but they do not allege facts showing that any defendant placed Tovar in a position where he could not "exercise his will in going where he . . . may lawfully go." *Holmes*, 629 N.W.2d at 527. At most, Plaintiffs allege that Tovar could not follow Flaherty after his arrest. Plaintiffs do not plead facts indicating that Tovar was otherwise prevented from leaving the shareholders meeting. Accordingly, Tovar's false imprisonment claim, Count VIII, is dismissed.

In sum, Counts VI through VIII are dismissed because Plaintiffs have not pleaded sufficient facts to state any of Tovar's intentional tort claims.

### E.  NLPC and Flaherty's Promissory Estoppel Claim

Finally, the Court analyzes whether Count IX, NLPC and Flaherty's promissory estoppel claim, survives the Berkshire Defendants' Rule 12(b)(6) Motion to Dismiss. Under Nebraska law, "a claim of promissory estoppel requires a plaintiff to show: (1) a promise that the promisor should have reasonably expected to induce the plaintiff's action or forbearance, (2) the promise did in fact induce the plaintiff's action or forbearance, and (3) injustice can only be avoided by enforcing the promise." *Weitz Co, LLC v. Hands, Inc.*, 882 N.W.2d 659, 668 (Neb. 2016). "[T]he law in Nebraska is that a promissory estoppel action may be based on an alleged promise that is insufficiently definite to form a contract, but upon which the promisee's reliance is reasonable and foreseeable." *Blinn v. Beatrice Cmty. Hosp. & Health Ctr., Inc.*, 708 N.W.2d 235, 248 (Neb. 2006). "A promisor need not

intend a promise to be binding in order to foresee that a promisee may reasonably rely on it." *Id.* "[A] promise which the promisor should reasonably expect to induce action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Pennfield Oil Co. v. Winstrom*, 720 N.W.2d 886, 902 (Neb. 2006).

Here, the Court finds that Plaintiffs have "failed to allege the existence of a promise, the enforcement of which is necessary to avoid an injustice." *Harrington v. Strong*, 363 F.Supp.3d 984, 1011 (D. Neb. Jan. 29, 2019). Viewing the Complaint in the light most favorable to Plaintiffs, the Court understands Plaintiffs to allege that the May 1, 2023, email from Berkshire Hathaway personnel—which provided NLPC and Flaherty with instructions for the proposal presentation— was a promise that Plaintiffs "would be allowed to present their proposal at the Berkshire Hathaway shareholders' meeting." Filing 1 at 13 (¶ 86). Plaintiffs allege that this "promise did in fact induce Plaintiffs to travel to Omaha, Nebraska, in order to present their proposal and incurred [sic] travel and lodging expenses." Filing 1 at 13 (¶ 89).

Though Plaintiffs did travel to Omaha to present NLPC's shareholder proposal at Berkshire Hathaway's annual shareholder meeting, the Court finds that Plaintiffs did not do so in reliance on a promise by the Berkshire Defendants. Instead, as the Berkshire Defendants point out, SEC regulations require that either a shareholder who submits a proposal (NLPC) or a representative of that shareholder (Flaherty) "must attend the [shareholders] meeting to present the proposal." 17 C.F.R. § 240.14a-8(h)(1); Filing 21 at 27. Because NLPC was obligated to attend Berkshire Hathaway's 2023 shareholders meeting, there is no promise for the Court to enforce against the Berkshire Defendants. Accordingly, the Court dismisses Count IX against the Berkshire Defendants because Plaintiffs fail to state a claim for promissory estoppel as a matter of law.

### F.  The Doe Defendants

The Berkshire Defendants' Motion to Dismiss only seeks dismissal of Plaintiffs' claims against the Berkshire Defendants. Filing 20. The Berkshire Defendants do not challenge the sufficiency of Plaintiffs' claims against the Doe Defendants, unnamed security guards who were allegedly agents of the Berkshire Defendants. Filing 20. It is generally "impermissible to name fictitious parties as defendants." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). However, "an action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery." *Id.* Even under this "limited exception to the general prohibition against naming fictious parties as defendants," Plaintiffs must still comply with the Federal Rules of Civil Procedure. *Perez v. Doe(s) 1 through 10*, No. 4:18CV3014, 2018 WL 11260438, at *6 (D. Neb. Apr. 9, 2018); *Ottis v. Fischer Price*, 627 F.Supp.2d 1040, 1049 (D. Neb. May 30, 2008) (dismissing the plaintiff's allegations against unnamed defendants after the plaintiff failed to effect service on them).

Federal Rule of Civil Procedure 4(m) requires Plaintiffs to effect service on the defendants—named and unnamed alike—within 90 days after filing their Complaint. Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."). Although Plaintiffs filed their Complaint on May 3, 2024, they have yet to provide a service of summons and complaint on the Doe Defendants. Plaintiffs have also failed to file a motion for an extension of time to permit discovery of the Doe Defendants' identities. Accordingly, the Court gives Plaintiffs notice pursuant to Rule 4(m) that unless Plaintiffs file a motion for an extension of time for leave to serve the Doe

Defendants demonstrating good cause, Plaintiffs' claims against the Doe Defendants will be dismissed in seven days from the date of this Order.

### III. CONCLUSION

In light of Flaherty's self-alleged trespass and Plaintiffs' failure to allege sufficient factual matter to plausibly state their claims, Plaintiffs' Complaint is dismissed against the Berkshire Defendants. Accordingly,

IT IS ORDERED that

1. The Berkshire Defendants' Motion to Dismiss, Filing 20, is granted;

2. The Berkshire Defendants' Motion to Strike the Declaration of Peter T. Flaherty, Filing 28, is granted to the extent that the Berkshire Defendants request that the Court disregard the Declaration; and

3. Absent a motion for an extension of time for leave to serve the Doe Defendants demonstrating good cause, Plaintiffs' claims against the Doe Defendants will be dismissed in seven days from the date of this Order.

Dated this 29th day of October, 2024.

BY THE COURT:

Brian C. Buescher
United States District Judge