IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| NATIONAL LEGAL AND POLICY CENTER, PETER T. FLAHERTY and JAMES "JAMIE" R. TOVAR, | ) ) ) ) | 8:24CV162 |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | **FIRST AMENDED COMPLAINT** |
| BERKSHIRE HATHAWAY INC., WARREN BUFFETT, CHRIS THOMPSON and DAN CLARK, | ) ) ) ) ) | |
| Defendants. | ) | |

Plaintiffs National Legal and Policy Center ("NLPC"), Peter T. Flaherty, and James "Jamie" R. Tovar, for their First Amended Complaint, allege as follows:

## JURISDICTION AND VENUE

1. Jurisdiction is conferred upon this court by Title 28 United States Code section 1332. The unlawful acts and practices alleged herein occurred in Douglas County, Nebraska, which is within this judicial district.

2. This Court has further jurisdiction over the parties and the subject matter of this action pursuant to 28 U.S.C. §1332(d) because: (a) there is complete diversity of citizenship between Plaintiff and Defendants; and (b) the amount in controversy exceeds $75,000 exclusive of costs and interests.

3. Venue is proper in this district pursuant to 18 U.S.C. §1965(a) and U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to this action occurred in this district and because Defendants transact business in this district.

1

## PARTIES

### PLAINTIFFS

4.     Plaintiff NLPC is a 501(c)(3) nonprofit organization under the Internal Revenue Code, granted tax-exempt status in 1993 with a principal place of business in Virginia. Its principal address is 107 Park Washington Court, Falls Church, VA 22046.

5.     Plaintiff Peter T. Flaherty is an individual who at all times relevant to this complaint is a citizen of and resides in Virginia. Mr. Flaherty's address is 2012 N. Westmoreland Street, Arlington, VA 22231.

6.     Plaintiff James "Jamie" R. Tovar is an individual who at all times relevant to this complaint is a citizen of and resides in Virginia. Mr. Tovar's address is 2230 George C. Marshall Drive, #518, Falls Church, VA 22043.

### DEFENDANTS

7.     At all times herein mentioned, Defendant Berkshire Hathaway Inc. ("Berkshire") was, and is now, a business entity incorporated in the State of Delaware, but for diversity purposes, its principal place of business or "nerve center" is Nebraska.  See *Hertz Corp. v. Friend*, 559 U.S. 77 (2010). Berkshire's registered agent is Cara A. Lazure, with an address at 3555 Farnam Street, Suite 1440, Omaha, NE 68131.

8.     Defendant Warren Buffett is an individual who, on information and belief, resides in Nebraska and is a citizen of Nebraska.

9.     On information and belief, Defendants Chris Thompson and Dan Clark are residents and citizens of Nebraska.

**FACTUAL ALEGATIONS**

10. NLPC is a 501(c)(3) nonprofit organization under the Internal Revenue Code, granted tax-exempt status in 1993. NLPC is the sponsor of the Corporate Integrity Project, through which it exposes corruption in public companies, and addresses corporate governance and policy issues through shareholder activism.

11. NLPC has engaged in shareholder activism since 2004. In 2023, NLPC filed 26 shareholder proposals on a variety of topics. NLPC-filed proposals for an independent chair were also considered this year at Bank of America, Coca-Cola, Goldman Sachs, Home Depot, Mondelez, PepsiCo, Salesforce, and Visa.

12. Peter Flaherty is Chairman of NLPC and has personally delivered prepared remarks supporting NLPC's proposals at various shareholder meetings.

13. On October 18, 2022, Paul Chesser, Director of NLPC's Corporate Integrity Project, submitted a shareholder proposal to Berkshire Hathaway, Inc. ("Berkshire") titled "Request for Board of Directors to Adopt Policy for Independent Chair." NLPC's cover letter included the SEC-required information about NLPC's availability to discuss the proposal with the company should it wish to do so. At no time did the company contact NLPC about having such informal engagement.

14. NLPC was the proponent of a similar proposal for an independent chair in 2022. At Berkshire's 2022 shareholders' meeting, Mr. Flaherty spoke then in support of the resolution for more than five minutes without incident. It received support from diverse shareholders including a public endorsement by the California Public Employees' Retirement System (CalPERS). The proposal received the vote of 10.67% of the outstanding shares, thereby qualifying it for reconsideration in 2023.

15. The renewed proposal and supporting statement were published in Berkshire's proxy dated March 17, 2023, as Proposal No. 8.5. On April 21, 2023, NLPC submitted a Notice of Exempt Solicitation in support of the proposal. Links were published on the SEC's EDGAR website and on Berkshire's website.

16. The Notice addressed a number of topics, including the benefits to public companies of having different individuals occupying the positions of Chief Executive Officer and Chairman, citing several corporate governance experts. The Notice also analyzed Berkshire's "underwhelming" succession plan and criticized Mr. Buffett's failure to hold portfolio company executives accountable for public policy stances and interventions.

17. Finally, the Notice addressed Mr. Buffett's "support for controversial and divisive political issues" through his billion-dollar donations to the Bill and Melinda Gates Foundation and the Susan Thompson Buffett Foundation.

18. From the Notice:

> Another argument for an independent chair policy at Berkshire Hathaway is the fact that the company's identity *is* Mr. Buffett, whether he likes it or not (we think he does). The consequence of this entanglement is the perception that his engagement on controversial issues is endorsed by the Company - a view that Mr. Buffett says he does not want.

19. On April 24, 2023, NLPC reported on its website that it had filed the Proposal and the Notice of Exempt Solicitation, and repeated the themes in those two documents.

20. On May 1, 2023, Mr. Chesser received an email from Marc Hamburg, who is Berkshire's Secretary, Senior Vice President and Chief Financial Officer, with instructions for proposal proponents for the day of the meeting, including where to report to deliver proposal presentations. The email stated, "Once you arrive at microphone zone 1, you should ask for either Dan Jaksich or Cathy Woollums." Ms. Woollums, who is senior vice president, chief

sustainability officer for Berkshire Hathaway Energy, and Mr. Flaherty had met in 2022 as she had served the year before in the same role as a liaison for proposal proponents. Mr. Hamburg's email also stated, "You will have three minutes to present the proposal. However, we will be somewhat flexible as to time should you run over a minute or so."

21. On May 2, 2023, NLPC received two credentials for admittance to the meeting via FedEx from Berkshire for Mr. Flaherty and Mr. Tovar, a NLPC senior staff member who planned to accompany Peter Flaherty. On May 5, 2023, the day before Berkshire's shareholders' meeting, NLPC published on its website an advance copy of Mr. Flaherty's planned remarks for the next day, which, when read, were originally timed at four minutes and ten seconds.

22. The Berkshire shareholders' meeting took place on May, 6, 2023, at the CHI Health Center, 455 North 10th Street, Omaha, Nebraska, at approximately 4:30 p.m. CT. The actual business meeting was preceded by other events, including two lengthy question-and-answer sessions with Warren Buffett and Vice-Chairman Charlie Munger beginning at 10 a.m. with questions being asked by shareholders from the floor.

23. Mr. Flaherty arrived at microphone Zone 1 shortly before 4:30 p.m. on the concourse level as instructed and was greeted by Ms. Woollums. He was accompanied by his assistant, Mr. Tovar. Ms. Woollums told Mr. Flaherty before he spoke that the three-minute limitation on his statement would be strictly enforced (contrary to the earlier email that the time limit as somewhat flexible) and that he should stay "on topic."

24. Proponents of four proposals spoke before Mr. Flaherty, including Michael Frerichs, Treasurer of Illinois. All four presentations went over the three-minute limitation. There were no reminders or interruptions from the chair or any other person.

25. Mr. Flaherty began to deliver his prepared remarks. Video of the event shows that at 1:08 minutes into his remarks, Mr. Flaherty was approached and interrupted at the microphone by Ms. Woollums. Not audible through the sound system, Ms. Woollums told Mr. Flaherty that he should stay "on topic." Mr. Flaherty stated into the microphone, "You are not going to censor what I say, ma'am. I'm very sorry. And I appeal to the Chair (occupied by Mr. Buffett) that I be allowed to continue. Sir?"

26. Mr. Buffett stated, "You may continue but under the three-minute limitation." Mr. Flaherty replied, "Of course," and resumed speaking at the 1:28 mark. At the 1:54 mark, Mr. Buffett attempted to talk over Mr. Flaherty and appeared to give direction to other persons in the hall. This portion of Mr. Flaherty's remarks concerned Bill Gates's relationship with Jeffrey Epstein, a topic that had been recently reported in depth in the *Wall Street Journal*. At the 2:04 mark, Mr. Flaherty's mic went dead, although Mr. Flaherty did not know it at the time.

27. On information and belief, Mr. Buffett and/or one of his agents acting on his or Berkshire's behalf intentionally ordered that Mr. Flaherty's mic be cut. The mic was not silenced due to some unforeseen mechanical failure. Importantly, neither NLPC nor Mr. Flaherty were ever given notice that the topic of their proposal was somehow inappropriate or that Mr. Flaherty should limit his remarks. Indeed, with respect to the Q&A session open to any attendee, Berkshire's Shareholders Guide on "Microphone Manners" (p. 7) makes clear that other than questions regarding Berkshire's investments or politics, "[a]ny other subjects are fair game."

28. Immediately, two men, who never identified themselves, but on information and belief were plain clothes security guards Defendants Chris Thompson and Dan Clark hired by Berkshire, stood in front of Mr. Flaherty. He was told to leave or he would be arrested. Mr. Flaherty replied that he would leave when he finished his statement and told the one guard, "Mr.

Buffett is in the chair and he will rule, not you." He also stated that if he was not allowed to finish that he would file a Complaint with the SEC. At this point, Mr. Flaherty was not fully aware that his mic had been cut, was still within the three-minute limitation, and had already received a favorable ruling from the chair to continue his presentation.

29.     On information and belief, Mr. Buffett and/or one or more of his agents ordered that Mr. Flaherty be ejected from the hall.

30.     Chris Thompson and/or Dan Clark summoned a uniformed Omaha policeman who was nearby and requested that he arrest Mr. Flaherty. He grabbed Mr. Flaherty by the arm, advised him that he was under arrest, and led him from the arena. Mr. Tovar attempted to follow Mr. Flaherty as he was removed from the arena but was physically prevented from doing so by one of the two unidentified security guards.

31.     Mr. Flaherty was taken to an office within the CHI Health Center. He was issued a "Report on the Issuance of a Ban and Bar Letter" by a man who never identified himself. Less than an hour later, Mr. Flaherty was transported by Omaha Police to the Douglas County Corrections Center where he was searched, handcuffed, fingerprinted, photographed, and charged with a Request to Leave, a violation akin to criminal trespass. In total, he was in custody for approximately three hours and was subsequently released after posting bail later that evening around 8:30 p.m.

### COUNT I: ASSAULT
### (PLAINTIFF PETER T. FLAHERTY)

32.     Plaintiffs repeat and allege each of the allegations in all paragraphs as set forth herein.

33.     Chris Thompson and Dan Clark acted, intending to cause harmful or offensive contact.

7

34. Chris Thompson and Dan Clark acted under the direction of, and as the agents of, Warren Buffett and Berkshire Hathaway.

35. Peter T. Flaherty reasonably believed that he was about to be touched in a harmful or offensive manner.

36. Chris Thompson and Dan Clark threatened to harm and touch Peter T. Flaherty in a harmful or offensive manner.

37. Chris Thompson's and/or Dan Clark's touching was offensive because it offended a reasonable sense of personal dignity.

38. Peter T. Flaherty did not consent to Chris Thompson's and/or Dan Clark's conduct.

39. Peter T. Flaherty was harmed, and the conduct of Chris Thompson and Dan Clark was a substantial factor in causing Flaherty's harm.

## COUNT II: BATTERY
### (PLAINTIFF PETER T. FLAHERTY)

40. Plaintiffs repeat and allege each of the allegations in all paragraphs as set forth herein.

41. Chris Thompson and/or Dan Clark touched Peter T. Flaherty with the intent to harm or offend him.

42. Chris Thompson and/or Dan Clark touched Peter T. Flaherty because unknown officers or agents of Berkshire Hathway instructed him to do so or that he was acting under the apparent authority of officers or agents of Berkshire Hathaway.

43. Chris Thompson and/or Dan Clark instructed law enforcement to physically take Peter T. Flaherty into custody.

44. Peter T. Flaherty did not consent to being touched by Chris Thompson and/or Dan Clark.

45. Peter T. Flaherty did not consent to being touched by law enforcement.

46. Peter T. Flaherty was offended by Chris Thompson's and/or Dan Clark's conduct.

47. A reasonable person in Peter T. Flaherty's situation would have been offended by the touching.

48. Peter Flaherty seeks damages against Chris Thompson and/or Dan Clark and Berkshire Hathaway.

### COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (PLAINTIFF PETER T. FLAHERTY)

49. Plaintiffs repeats and alleges each of the allegations in all paragraphs as set forth herein.

50. The conduct of Berkshire Hathaway, Warren Buffett and their agents was outrageous and intended to cause Peter T. Flaherty emotional distress.

51. Peter T. Flaherty suffered emotional distress.

52. The conduct of Warren Buffet. Berkshire Hathaway and their agents was a substantial factor causing Mr. Flaherty emotional distress.

53. In the conduct described above, Warren Buffett, Berkshire Hathway, and/or their agents acted willfully, wantonly, maliciously, oppressively, and with conscious disregard and deliberate indifference for Peter T. Flaherty's rights, and are therefore liable for damages. Accordingly, Peter T. Flaherty seeks nominal damages against Warren Buffett and Berkshire Hathaway.

## COUNT IV: FALSE IMPRISONMENT
### (PLAINTIFF PETER T. FLAHERTY)

54. Plaintiffs repeat and allege each of the allegations in all paragraphs as set forth herein.

55. Defendants acted willfully intending to confine Peter T. Flaherty without his consent.

56. Defendants acted without authority of law.

57. Defendants caused Peter T. Flaherty to be confined without his consent.

58. Peter T. Flaherty was aware of his confinement.

## COUNT V: MALICIOUS PROSECUTION
### (PLAINTIFF PETER T. FLAHERTY)

59. Defendant Warren Buffett and/or agents of Berkshire Hathaway caused criminal proceedings to be commenced against Peter T. Flaherty under Omaha City law by having him arrested at the CHI Health Center.

60. Mr. Flaherty was subsequently booked; criminal charges were filed against him for a form of criminal trespass; and he had to post bail in the amount of $250.

61. The criminal proceedings were shortly thereafter terminated in Mr. Flaherty's favor.

62. Defendant Warren Buffett and/or agents of Berkshire Hathaway lacked probable cause to institute or procure the criminal proceedings.

63. Defendant Warren Buffett and/or agents of Berkshire Hathaway acted with malice.

64. Plaintiff suffered monetary damages as well as physical and mental suffering, distress and humiliation.

## COUNT VI: ASSAULT
### (PLAINTIFF JAMES "JAMIE" R. TOVAR)

65. Plaintiffs repeat and allege each of the allegations in all paragraphs as set forth herein.

66. Chris Thompson and/or Dan Clark acted, intending to cause harmful or offensive contact.

67. Chris Thompson and/or Dan Clark acted under the direction of, and as the agents of, Warren Buffett and Berkshire Hathaway.

68. Plaintiff James "Jamie" R. Tovar reasonably believed that he was about to be touched in a harmful or offensive manner.

69. Chris Thompson and/or Dan Clark threatened to harm and touch Mr. Tovar in a harmful or offensive manner.

70. Chris Thompson's and/or Dan Clark's touching of Mr. Tovar was offensive because it offended a reasonable sense of personal dignity.

71. Mr. Tovar did not consent to Chris Thompson's and/or Dan Clark's conduct.

72. Mr. Tovar was harmed, and the conduct of Chris Thompson and/or Dan Clark was a substantial factor in causing Mr. Tovar's harm.

## COUNT VII: BATTERY
### (PLAINTIFF JAMES "JAMIE" R. TOVAR)

73. Plaintiffs repeat and allege each of the allegations in all paragraphs as set forth herein.

74. Chris Thompson and/or Dan Clark touched James "Jamie" R. Tovar with the intent to harm or offend him.

11

75. Chris Thompson and/or Dan Clark touched Mr. Tovar because unknown officers or agents of Berkshire Hathway instructed him to do so or that he was acting under the apparent authority of officers or agents of Berkshire Hathaway.

76. Mr. Tovar did not consent to being touched by Chris Thompson and/or Dan Clark.

77. Mr. Tovar was offended by the conduct of Chris Thompson and/or Dan Clark

78. A reasonable person in Mr. Tovar's situation would have been offended by the touching.

79. Mr. Tovar seeks damages against Chris Thompson and/or Dan Clark, and Berkshire Hathaway.

### COUNT IV: FALSE IMPRISONMENT
### (PLAINTIFF JAMES "JAMIE" R. TOVAR)

80. Plaintiffs repeat and allege each of the allegations in all paragraphs as set forth herein.

81. Defendants Chris Thompson and/or Dan Clark acted willfully intending to confine James "Jamie" R. Tovar to the CHI Health arena without his consent.

82. Defendants Chris Thompson and/or Dan Clark acted without authority of law.

83. Defendants Chris Thompson and/or Dan Clark caused Mr. Tovar to be confined without his consent.

84. Mr. Tovar was aware of his confinement and was under the reasonable impression that if he tried to leave the arena to accompany his colleague Mr. Flaherty, that he too would be arrested.

### COUNT IX: PROMISSORY ESTOPPEL
### (PLAINTIFFS PETER T. FLAHERTY AND NATIONAL LEGAL AND POLICY CENTER)

85. Plaintiffs repeat and allege each of the allegations in all paragraphs as set forth herein.

86. Defendants promised Plaintiffs NLPC and Mr. Flaherty that they would be allowed to present their proposal at the Berkshire Hathaway shareholders' meeting.

87. Defendants should have reasonably expected to induce Plaintiffs' actions of traveling to Omaha, Nebraska, to present their proposal.

88. Defendants were obligated by SEC rules to allow Plaintiffs, as shareholders, to present their proposal.

89. Defendants' promise did in fact induce Plaintiffs to travel to Omaha, Nebraska, in order to present their proposal and incurred travel and lodging expenses.

90. Defendant Warren Buffett further promised Mr. Flaherty that he would be allowed to continue to make his presentation while he was interrupted by Cathy Woollums, and Mr. Flaherty relied on that promise and reassurance.

91. Defendants breached their promise by having Mr. Flaherty's mic cut off, ejected from the arena, and arrested.

92. Injustice can only be avoided by enforcing the promise and reimbursing Plaintiffs for the losses they incurred by relying on that promise and other equitable relief, including posting his full remarks on Berkshire Hathaway's website for two years.

### PRAYER FOR RELIEF ON CLAIMS

WHEREFORE, Plaintiffs prays for relief, as follows:

1. For damages according to proof;

2. For damages in a sum according to proof;

4. For reasonable attorney's fees;

5. For cost of suit herein incurred; and

6. For such other and further relief as the Court deems just and proper.

DATED November 22, 2024

NATIONAL LEGAL AND POLICY CENTER, PETER T. FLAHERTY, and JAMES "JAMIE" R. TOVAR, Plaintiffs,

By: */s/ Thomas J. Monaghan*
THOMAS J. MONAGHAN, #12874
STUART J. DORNAN, #18553
Attorneys for Plaintiffs
Dornan, Troia Howard Breitkreutz
Dahlquist & Klein PC LLO
1403 Farnam Street, Suite 232
Omaha, Nebraska 68102
(402) 884-7044 (phone)
tom@dltlawyers.com