**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEBRASKA**

|  |  |
|---|---|
| NATIONAL LEGAL POLICY CENTER, PETER T. FLAHERTY, and JAMES "JAMIE" TOVAR, | Civil Action No.: 8:24-CV-162 |
| Plaintiff, | |
| v. | |
| BERKSHIRE HATHAWAY, INC. WARREN BUFFETT, CHRIS THOMPSON and DAN CLARK, | |
| Defendants. | |

**BRIEF IN SUPPORT OF DEFENDANT DAN CLARK'S**
**MOTION TO DISMISS PURSUANT TO**
**FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 2

    I.   The Parties ................................................................................................. 2

    II.  Plaintiffs' Presentation at the 2023 Shareholder Meeting ......................... 3

    III. Procedural Background ............................................................................. 4

    IV. Amended Complaint ................................................................................. 6

LEGAL STANDARD .............................................................................................. 7

ARGUMENT ........................................................................................................... 8

    I.   This Court Properly Held that Mr. Flaherty's Trespass Defeats His Intentional Tort Claims ............................................................................................ 8

        1.  Mr. Flaherty's Trespass Defeats His Assault Claim (Count I) ................... 9

        2.  Mr. Flaherty's Trespass Defeats His Battery (Count II) ........................... 10

        3.  Mr. Flaherty's Battery Defeats His False Imprisonment Claim (Count IV) ........... 12

    II.  This Court Properly Dismissed Mr. Tovar's Intentional Tort Claims (Counts VI, VII, VIII) .................................................................................................. 14

    III. Plaintiffs Flaherty and NLPC Have Failed to State a Claim for Promissory Estoppel ................................................................................................... 17

CONCLUSION ...................................................................................................... 18

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009).................................................................................... 7, 8

*Barber v. State,*
 316 Neb. 398 (2024)................................................................................... 12

*Barton v. Taber,*
 820 F.3d 958 (8th Cir. 2016)........................................................................ 7

*Bell Atlantic Corp. v. Twombly,*
 550 U.S. 544 (2007)...................................................................................... 7

*Bell v. Dow Chem. Co.,*
 No. 21-326-SDD-SDJ, 2022 WL 1221639
 (M.D. La. Mar. 11, 2022)........................................................................... 18

*Bissonette v. Luskey,*
 No. 02-335 ADM/AJB, 2003 WL 1700466
 (D. Minn. Mar. 27, 2003)........................................................................... 18

*C.H. Robinson Worldwide, Inc. v. Lobrano,*
 695 F.3d 758 (8th Cir. 2012)........................................................................ 8

*Corrado v. Life Inv'rs Ins. Co. of Am.,*
 804 F.3d 915 (8th Cir. 2015)........................................................................ 7

*Cowperthwait v. Brown,*
 82 Neb. 327 (1908)....................................................................................... 8

*Dangberg v. Sears, Roebuck & Co.,*
 198 Neb. 234 (1977)................................................................................... 19

*Daniels v. Kaiser Found. Hosps.,*
 No. SACV 24-00022-CJC (JDEx), 2024 U.S. Dist. LEXIS 73074
 (C.D. Cal. Apr. 19, 2024)........................................................................... 12

*Dion v. City of Omaha,*
 311 Neb. 522 (2022)................................................................................. 9, 13

*Edgar v. Omaha Pub. Power Dist.,*
 166 Neb. 452 (1958)............................................................................. 16, 17

*Fast Ball Sports, LLC v. Metro. Ent. & Convention Auth.*,
   21 Neb. App. 1 (2013) .................................................................................. 20

*Guzman v. Barth*,
   250 Neb. 763 (1996) ...................................................................................... 8

*Harrington v. Strong*,
   363 F. Supp. 3d 984 (D. Neb. Jan. 29, 2019) ............................................. 20

*Hires v. Mishawaka, et al.*,
   No. 3:22-CV-130 DRL-MGG, 2022 WL 16745031
   (N.D. Ind. Nov. 4, 2022) ............................................................................. 11

*Holmes v. Crossroads Joint Venture*,
   262 Neb. 98 (2001) ................................................................................. 14, 15

*Huskinson v. Vanderheiden*,
   197 Neb. 739 (1977) .................................................................................... 14

*Kasiah v. Crowd Sys.*,
   915 F.3d 1179 (8th Cir. 2019) .................................................................... 12

*Kenney v. Barna*,
   215 Neb. 863 (1983) ...................................................................................... 8

*Lovell v. Kearney*,
   200 Neb. 478 (1978) .................................................................................... 21

*Maynard v. State*,
   81 Neb. 301 (1908) .................................................................................. 8, 11

*McDonald Apiary, LLC v. Starrh Bees, Inc.*,
   No. 8:14-CV-351, 2016 WL 5921069
   (D. Neb. Oct. 10, 2016) ................................................................................. 9

*Nasuti v. Holm*,
   No. 3:22-cv-00025-RGE-SBJ, 2022 WL 18779981
   (S.D. Iowa Oct. 31, 2022) ........................................................................... 18

*Noble Systems Corp. v. Alorica Cent., LLC*,
   543 F.3d 978 (8th Cir. 2008) ...................................................................... 10

*Page v. Siedband*,
   No. A-19-121, 2023 WL 7499741
    (Neb. Ct. App. Nov. 14, 2023).................................................................... 19

*Phillips v. Liberty Mut. Ins. Co.*,
   293 Neb. 123 (2016) .................................................................................... 12

*Pinkston v. Bd. of Educ.*,
  No. 19 CV 6477, 2023 WL 6392302
  (N.D. Ill. Oct. 2, 2023) ............................................................................... 18

*Podraza v. Whiting*,
  790 F.3d 828 (8th Cir. 2015) ....................................................................... 2

*Reavis v. Slominski*,
  250 Neb. 711 (1996) ............................................................................. 10, 17

*Reed v. Chicago, B. & Q.R. Co.*,
  84 Neb. 8 (1909) ...................................................................................... 9, 13

*State v. Goering,*
  Nos. A-93-1128, A-93-1129, A-93-1130, A-93-1133,
  1994 WL 585763 (Neb. Ct. App. 1994) .................................................. 15

*State v. Rothenberger,*
  294 Neb. 810 (2016) .................................................................................. 16

*State v. Wright,*
  235 Neb. 564 (1990) .................................................................................. 11

*Villalta v. Waller,*
  No. 8:04CV386, 2005 WL 8176137 (D. Neb. Nov. 30, 2005)............... 15

*Weitz Co., LLC v. Hands, Inc.,*
  294 Neb. 215 (2016) .................................................................................. 20

*Zink v. Lombardi,*
  783 F.3d 1089 (8th Cir. 2015) .................................................................... 8

**State Cases**

Neb. Rev. Stat. § 14-606 ................................................................................... 12

Neb. Rev. Stat. § 29-401 ................................................................................... 12

Omaha Mun. Code § 20-155 ......................................................................... 8, 13

**Cases**

17 C.F.R. §§ 240.14a-8(h)(1) ........................................................................... 18

Federal Rule of Civil Procedure 12(b)(6) .......................................................... 1

**Other Authorities**

Peter Flaherty, *Peter Flaherty Arrested During Berkshire Meeting for Mention of Bill Gates & Jeffrey Epstein*, YouTube (May 11, 2023), https://www.youtube.com/watch?v=ErHXIrDNz14 .................................................................... 4

Restatement (Second) of Torts, § 890 ............................................................................... 8

Trespassing Policy, Omaha Police Department, Section VI: Request to Leave, available at https://public.powerdms.com/OPDEP1/documents/854044 ................................................. 14

Defendant Dan Clark ("Mr. Clark") respectfully submits this Brief in support of his Motion to Dismiss the First Amended Complaint ("Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

This Court held that "it is apparent on the face of the Complaint" that Plaintiff Peter "Flaherty [was] a trespasser" when he refused to leave Berkshire Hathaway Inc.'s ("Berkshire Hathaway") annual shareholders' meeting on May 6, 2023 (the "2023 Shareholder Meeting"). (Filing 36 at 13) ("Dismissal Order").  After Mr. Flaherty refused to leave, an Omaha police officer arrested him for trespassing.  One year later, he filed this suit to turn the consequences of his "self-alleged trespass"—as aptly defined by the Court—into intentional tort claims against Warren Buffett, Berkshire Hathaway, and two "John Doe" security guards allegedly hired by Berkshire Hathaway.  Recognizing the well-established right of property owners to use reasonable force to eject a trespasser, this Court dismissed the Complaint.

On February 14, 2025, Plaintiffs filed the Amended Complaint, which Magistrate Judge DeLuca recognized as "identical to the original complaint," except that it "names the John Does" including Mr. Clark.  (Filing 55 at 2).  Like the original Complaint, the Amended Complaint does not plead any offensive conduct, any violation of state law, or any use of force.  Instead, as this Court held, it only alleges Defendants ejected a trespasser by asking for police assistance.  This Court has already found that "the conduct of the [John] Doe Defendants" did not support any claim pled in the original Complaint.  (Dismissal Order (Filing 36) at 7).  The Court's prior reasoning mandates the same result here as to the claims against Mr. Clark in the Amended Complaint.

First, Mr. Flaherty's self-alleged trespass defeats the three intentional tort claims asserted against Mr. Clark. (*Id.* at 7). As the Dismissal Order makes clear, the "John Does" did not commit any torts. This Court previously dismissed Mr. Flaherty's assault claim "[w]hether initiated by the Berkshire Defendants or their alleged John Doe agents." (*Id.* at 14). This Court also dismissed his battery claim because "John Doe 1's 'touch' is a privileged act," not a battery. (*Id.* at 16). And this Court dismissed Mr. Flaherty's false imprisonment claim because, by the time the "Doe Defendant summoned a nearby police officer," Mr. "Flaherty had violated a legal ordinance of a Nebraska city." (*Id.* at 19).

Second, Plaintiff James Tovar, Mr. Flaherty's "assistant," asserts that he was also assaulted, battered, and falsely arrested when a security guard stood in front of him for a few seconds. This Court found that none of these claims were well-pled in the original Complaint, *id.* at 21–22, and they are no more sufficient here.

For these reasons, as explained further below, the Amended Complaint should be dismissed with prejudice.[1]

## BACKGROUND

### I.    The Parties[2]

Plaintiffs allege that National Legal and Policy Center ("NLPC") is a nonprofit organization that "addresses corporate governance and policy issues through shareholder activism." (Filing 56 at 3, ¶ 10) ("Am. Compl."). Plaintiff Peter Flaherty is NLPC's

---

[1]  Mr. Clark's counsel attempted to meet and confer with Plaintiffs regarding a stipulation about the impact of this Court's Dismissal Order on the identical claims pled against Mr. Clark. Plaintiffs' counsel has not responded.

[2]  The facts in this Brief are taken from the well-pled allegations in the Amended Complaint, which Mr. Clark assumes as true solely for the purpose of this Motion, and "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Podraza v. Whiting*, 790 F.3d 828, 833 (8th Cir. 2015).

Chairman, and Plaintiff James Tovar is a "senior staff member" of NLPC. (*Id.* at 3–5, ¶¶ 12, 21).

Defendant Berkshire Hathaway is a Delaware corporation with its headquarters in Nebraska. (*Id.* at 2, ¶ 7). Defendant Warren Buffett is the Chairman and Chief Executive Officer of Berkshire Hathaway (together with Berkshire Hathaway, the "Berkshire Defendants"). (*Id.* at 4, ¶ 16). Plaintiffs allege that Defendants Chris Thompson and Dan Clark (the "Security Guards") were "plain clothes" security guards "hired by Berkshire Hathaway." (*Id.* at 6–7, ¶ 28). Except for jurisdictional allegations, the Amended Complaint refers to the Security Guards collectively. *See, e.g.*, (*id.* at 7, ¶ 30) ("Chris Thompson and/or Dan Clark summoned a uniformed Omaha police officer").

## II.    Plaintiffs' Presentation at the 2023 Shareholder Meeting

On May 6, 2023, Berkshire Hathaway held its annual meeting at the CHI Health Center Arena (the "Arena"). (*Id.* at 5, ¶ 22). Mr. Flaherty and Mr. Tovar received credentials, or tickets, to attend the 2023 Shareholder Meeting—Mr. Flaherty to deliver NLPC's shareholder proposal and Mr. Tovar as Mr. Flaherty's "assistant." (*Id.* ¶¶ 22-23). When Mr. Flaherty arrived at the microphone zone prior to his presentation, a Berkshire Hathaway representative informed Mr. Flaherty that a "three minute time limitation" on presentations would be "strictly enforced" and warned him to stay "on topic" during his presentation. (*Id.* ¶ 23).

One minute and eight seconds into Mr. Flaherty's presentation, he was warned again to "stay on topic." (*Id.* at 6, ¶ 25). Mr. Flaherty asked Mr. Buffett for permission to continue speaking. (*Id.*). After Mr. Buffett let him continue (*Id.* ¶ 26), Mr. Flaherty then started to speak about "Bill Gates's relationship with Jeffrey Epstein." (*Id.*). At that time, Mr. Buffett "appeared to give direction to other persons in the hall." (*Id.*). Plaintiffs allege that the Security Guards then told Mr. Flaherty to "leave or he would be arrested." (*Id.* ¶ 28).

Mr. Flaherty told the Security Guards that "Mr. Buffett is in the chair and he will rule, not you." (*Id.*).  After Mr. Flaherty indicated that he would not leave, Mr. Buffett "and/or one or more of his agents" "ordered that Mr. Flaherty be ejected" from the Arena.  (*Id.* at 7, ¶ 29).

After Mr. Flaherty refused to leave, one of the Security Guards waved over a nearby police officer, who is not a defendant in this action.  (*Id.* ¶ 30).  The Security Guards again asked Mr. Flaherty to leave in the presence of the non-party police officer.[3]  After Mr. Flaherty again refused to leave, the non-party Omaha police officer "grabbed Mr. Flaherty by the arm, advised him that he was under arrest, and led him from the arena."  (*Id.* ¶ 30).  Mr. Tovar attempted to "follow Mr. Flaherty" but a Security Guard "prevented him from doing so." (*Id.*).  Outside of this short interaction, Plaintiffs do not allege that they had any other contact with the Security Guards.

Mr. Flaherty was issued a "Report on the Issuance of a Ban and Bar Letter," (*id.* ¶ 31), which identified each of the Security Guards.  *See* ([Filing 26-1 at 2](#)).  Mr. Flaherty was transported to the Omaha Police Department and charged with a violation of Omaha's Request to Leave Ordinance, "a violation akin to criminal trespass."  (Am. Compl. ([Filing 56 at 7](#)) ¶ 31).  He was permitted to leave after posting bail of $250.  (*Id.* at 7, ¶ 31; 10, ¶ 60).  In all, he was detained for three hours.  (*Id.* at 7, ¶ 31).

III.        **Procedural Background**

Plaintiffs filed this lawsuit on May 3, 2024 against Defendants Berkshire Hathaway, Mr. Buffett, and the Security Guards, then identified as "John Does 1 and 2."  *See* ([Filing 1](#)). The Complaint asserted nine counts against either the Berkshire Defendants and the Doe

---

[3]  Mr. Flaherty posted videos of the footage on his YouTube channel.  *See* Peter Flaherty, *Peter Flaherty Arrested During Berkshire Meeting for Mention of Bill Gates & Jeffrey Epstein*, YouTube (May 11, 2023), https://www.youtube.com/watch?v=ErHXIrDNz14.

Defendants based largely on the conduct of a non-defendant police officer.  Mr. Flaherty brought five intentional tort claims: Count I (assault), Count II (battery), Count III (intentional infliction of emotional distress), Count IV (false imprisonment), and Count V (malicious prosecution).  (Filing 1 at 7–10).  Mr. Tovar brought three intentional tort claims: Count VI (assault), Count VII (battery), and Count VIII (false imprisonment).  (*Id.* at 10–12).  NLPC and Flaherty also brought a promissory estoppel claim, Count IX, based on an alleged promise made by the Berkshire Defendants to Mr. Flaherty.  (*Id.* at 12–13).

On June 28, 2024, the Berkshire Defendants moved to dismiss all claims in the Complaint.  (Filing 20; Filing 21).  On October 29, 2024, "assuming without decid[ing] . . . that Plaintiffs have sufficiently alleged facts showing that the Doe Defendants acted as agents of the Berkshire Defendants," this Court dismissed all claims as to the Berkshire Defendants, including claims based "on the conduct of the Doe Defendants."  (Dismissal Order (Filing 36) at 7).

In the Dismissal Order, this Court ordered the dismissal of claims against the Doe Defendants within seven days absent Plaintiffs seeking an extension of time to serve the Doe Defendants.  (Filing 36 at 25).  Plaintiffs requested leave to extend the time to serve the Doe Defendants because "prior to filing their Complaint, [they] did not know the actual names of the two (2) Does."  (Filing 37 at 1).  But that explanation was false because both Chris Thompson and Dan Clark were identified by name in the Report on the Issuance of Ban and Bar Letter (Filing 26-1), which the original Complaint pleads that Mr. Flaherty received on May 6, 2023.  *See* (Filing 1 at 7, ¶ 31).  On November 6, 2024, Magistrate Judge DeLuca granted Plaintiffs' request for an extension to serve the John Doe Defendants until November 27, 2024.  (Filing 37; Filing 38).  On November 22, 2024, Plaintiffs filed an amended

complaint which named Mr. Thompson and Mr. Clark.  (Filing 39).  On November 26, 2024, Magistrate Judge DeLuca struck that amended complaint.  (Filing 44).

On January 7, 2025, Magistrate Judge DeLuca entered an order to show cause as to why the case should not be dismissed as to the Security Guards.  (Filing 52).  On January 14, 2025, Plaintiffs moved for leave to file an Amended Complaint (Filing 53) but did not seek leave to extend the service deadline.  On February 11, 2025, Magistrate Judge DeLuca granted the motion for leave, and *sua sponte* extended Plaintiffs' deadline to serve the Security Guards, although the order did not provide a specific deadline.[4]  (Filing 55 at 3).

## IV.    Amended Complaint

On February 14, 2025, Plaintiffs filed the Amended Complaint (Filing 56).  "Plaintiffs' amended complaint is identical to the original complaint but names the Doe Defendants as Dan Clark and Chris Thompson."  (Filing 55).[5]  As against the Security Guards, Mr. Flaherty asserts state law claims for assault (Count I); battery (Count II); and false imprisonment (Count IV) based largely on the conduct of a nondefendant police officer.[6]  (Am. Compl. (Filing 56) at 7-10).  Mr. Tovar asserts state law claims for assault (Count VI); battery (Count VII); and false imprisonment (Count VIII), although he pleads no salient facts about any

---

[4]  Plaintiffs still do not appear to have served Mr. Thompson.

[5]  Plaintiffs, for example, continue to allege that subject matter jurisdiction is proper under "Section 1332(d)"—the Class Action Fairness Act—instead of Section 1332(a)(1).  *See* (Dismissal Order (Filing 36) at 5).

[6]  Mr. Flaherty expressly asserts his claim for intentional infliction of emotional distress (Count III) only against the Berkshire Defendants. (Am. Compl. (Filing 56) at 9, ¶ 53) ("Plaintiff Peter T. Flaherty seeks nominal damages against Warren Buffett and Berkshire Hathaway").  Similarly, his claim for malicious prosecution is pled only against "Defendant Warren Buffett and/or agents of Berkshire Hathaway."  (*Id.* ¶ 59).  *Compare with* (*id.* ¶ 48) ("Peter Flaherty seeks damages against Chris Thompson and/or Dan Clark and Berkshire Hathaway.").

claim.[7] (*Id.* at 10-12).  Plaintiffs also assert a promissory estoppel claim (Count IX) based on the Berkshire Defendants' alleged promise to Mr. Flaherty for which they seek "equitable relief," including "posting Mr. Flaherty's remarks on Berkshire Hathaway's website." (*Id.* at 13).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). "If an affirmative defense . . . is apparent on the face of the complaint . . . that [defense] can provide the basis for dismissal under Rule 12(b)(6)." *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012) (citation omitted).  The "phrase face of the complaint . . . include[s] public records and materials embraced by the complaint, and material[s] attached to the complaint." *Id.*

---

[7] As in the original Complaint, Mr. Tovar mislabels his false imprisonment claim as Count IV.

## ARGUMENT

### I.    This Court Properly Held that Mr. Flaherty's Trespass Defeats His Intentional Tort Claims

In Nebraska, a trespasser is "a person who enters or remains upon premises in possession of another without the express or implied consent of the possessor." *Guzman v. Barth*, 250 Neb. 763, 766 (1996); *Kenney v. Barna*, 215 Neb. 863, 865 (1983) (same); *Cowperthwait v. Brown*, 82 Neb. 327, 335 (1908) (holding that an invited guest was permitted to remain until the party in possession "ordered him to leave"). In other words, a person who fails to honor a request to leave becomes a trespasser. *See, e.g.*, *Maynard v. State*, 81 Neb. 301, 313 (1908) ("[W]hen ordered to depart, he, failing to do so, became a trespasser, and deceased had the right to eject him."). Moreover, the City of Omaha has an aptly named "Request to Leave" ordinance, which prohibits "any person" from "refus[ing] to leave the property of another after being notified to leave by the owner, occupant or person in control thereof, or by his agent." Omaha Mun. Code § 20-155.

A party in possession of property has the right to eject a trespasser using reasonable force. *Reed v. Chicago, B. & Q.R. Co.*, 84 Neb. 8 (1909) ("[The plaintiff] was a mere trespasser when he entered the caboose after having been refused passage on the train, and the defendant and its employ[ees] were authorized to use such reasonable force as was necessary to eject plaintiff from the train."). "In some cases, the law creates a privilege for the enforcement of a right against another who has no legally protected interests affected by the exercise of the privilege as when the owner of land is given a privilege to eject a trespasser upon his land." (Dismissal Order (Filing 36 at 12)) (quoting Restatement (Second) of Torts, § 890; Cmt a); *McDonald Apiary, LLC v. Starrh Bees, Inc.*, No. 8:14-CV-351, 2016 WL 5921069, at *4 (D. Neb. Oct. 10, 2016) ("Nebraska generally adheres to the Restatement

(Second) of Torts with respect to trespass."). "A privileged act is generally defined as one that would ordinarily be tortious, but which, under the circumstances, does not subject the actor to liability." *Dion v. City of Omaha*, 311 Neb. 522, 550 (2022). "Ordinarily, the existence of a justification is a question of fact that the defendant must prove." *Noble Systems Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008). "If an affirmative defense such as a privilege is apparent on the face of the complaint, however, that privilege can provide the basis for dismissal under Rule 12(b)(6)." *Id.*

Here, Plaintiffs allege that Mr. Flaherty was ordered to leave the Arena (Am. Compl. (Filing 56 at 6–7) ¶ 28) ("[Mr. Flaherty] was told to leave."), and that he refused to leave (*id.* at 7, ¶ 30). Thus, "two things are apparent on the face" of the Amended Complaint: "first, [Mr.] Flaherty became a trespasser when he remained at the meeting after he was told to leave and second, the Berkshire Defendants had the right to eject him from the meeting." (Dismissal Order (Filing 36) at 14). Because Defendants' legal "privilege to eject [Mr.] Flaherty from the meeting" is apparent on the face of the Amended Complaint, that privilege is "fatal to all of [Mr.] Flaherty's intentional tort claims." (*Id.* at 13).

### 1.    Mr. Flaherty's Trespass Defeats His Assault Claim (Count I)

To plead a claim for assault in Nebraska, Mr. Flaherty must plead facts establishing: 1) "an attempt [of] force" or "threats"; 2) "made in a menacing manner," 3) "with intent to inflict bodily injury upon another," and 4) "with present apparent ability to give effect to the attempt, without requiring that the one assaulted be subjected to any actual physical injury or contact." *Reavis v. Slominski*, 250 Neb. 711, 717 (1996).

In both the original and Amended Complaints, the only facts pled about Mr. Flaherty's "assault" are that the Security Guards (allegedly as agents of the Berkshire Defendants) requested that Mr. Flaherty leave, which he refused. (Am. Compl. (Filing 56 at 6–7) ¶ 28).

As this Court already held, these facts are not "sufficient to state [Mr.] Flaherty's assault claim." (Dismissal Order (Filing 36) at 13). The Amended Complaint pleads no facts suggesting this request was a "threat" of "bodily harm." *See, e.g.*, *Hires v. Mishawaka, et al.*, No. 3:22-CV-130 DRL-MGG, 2022 WL 16745031, at *5 (N.D. Ind. Nov. 4, 2022) (dismissing assault claim when the "complaint is devoid of any factual allegations as to the nature of . . . the harmful or offensive conduct"). A request to leave or be arrested is not assault; it is a permissible exercise of property rights afforded by Nebraska law. *Maynard*, 81 Neb. at 313 (When "ordered to depart, he became a trespasser and deceased had the right to eject him"); *State v. Wright*, 235 Neb. 564, 566 (1990) (affirming criminal conviction for trespass when defendant "refused to leave when requested to do so, and had to be forcibly removed").

In light of Mr. Flaherty's self-alleged trespass, this "Court cannot reasonably infer that the Berkshire Defendants, or the Security Guards as their alleged agents, did anything more than exercise their legal privilege to eject a trespasser from the shareholders meeting." (Dismissal Order (Filing 36) at 14). Accordingly, Mr. "Flaherty's trespass defeats his assault claim," (*id.*) and Count I should be dismissed.

### 2.    Mr. Flaherty's Trespass Defeats His Battery Claim (Count II)

To state a claim for battery under Nebraska law, Mr. Flaherty must plead facts about "[a] harmful contact intentionally done." *Barber v. State*, 316 Neb. 398, 407 (2024). The Amended Complaint, like the original Complaint, only pleads that the Omaha Police officer non-forcefully walked Mr. Flaherty out of the Arena by the arm. (Am. Compl. (Filing 56 at 7) ¶ 30). These bare-bone facts do not sufficiently allege that the contact was "harmful" or "offensive" as required to state a claim for battery. *Barber*, 316 Neb. at 407; *see, also*, *Daniels v. Kaiser Found. Hosps.*, No. SACV 24-00022-CJC (JDEx), 2024 U.S. Dist. LEXIS 73074,

at *20 (C.D. Cal. Apr. 19, 2024) (dismissing assault and battery claims because "[p]laintiff does not explain what about Defendants' actions would have been offensive").

Moreover, no Defendant is liable for the contact made by the nondefendant police officer. As this Court held in dismissing the original Complaint, Plaintiffs fail to allege that the "officer acted as an agent of any defendant." (Dismissal Order (Filing 36) at 14). The Amended Complaint does not purport to cure that defect. In all events, it is black letter law that a police officer may use reasonable force to effect an arrest. *See Phillips v. Liberty Mut. Ins. Co*., 293 Neb. 123, 134 (2016) ("tort law recognizes that the use of force . . . is 'privileged' if it is reasonable and it is used for the purpose of effecting a lawful arrest"); *Kasiah v. Crowd Sys*., 915 F.3d 1179, 1184 (8th Cir. 2019) ("The police officer had authority to "grab the arrestee . . . when effectuating an arrest."). As a result, the "grabbed arm" by the nondefendant police officer is a privileged contact, not a battery. (Am. Compl. (Filing 56 at 9) ¶ 45).

To the extent Mr. Flaherty's battery claim is based on the alleged "touch[]" by one of the Security Guards, Defendants "were authorized to use such reasonable force as was necessary to eject" Mr. Flaherty from the 2023 Shareholder Meeting. *Reed*, 84 Neb. at 8. The Amended Complaint, like the original Complaint, does not describe the nature of the Security Guard's "touch." But "it is clear from the video of [Mr.] Flaherty's arrest—a video embraced by the Complaint—that neither Doe Defendant touched [Mr.] Flaherty's arm for longer than five seconds." (Dismissal Order (Filing 36) at 15). Under Nebraska trespass law, a property possessor's privilege to eject a trespasser by reasonable force includes "tak[ing] him by the arm or coat sleeve and lead[ing] him quietly from the [property]." *Reed*, 84 Neb. at 8. Thus, this "touch" is a privileged act "which, under the circumstances, does not subject the actor to liability." *Dion*, 311 Neb. at 550.

Accordingly, Mr. "Flaherty's trespass prevents him from bringing a battery claim under these circumstances," and Count II should be dismissed. (Dismissal Order (Filing 36) at 15).

### 3. Mr. Flaherty's Battery Defeats His False Imprisonment Claim (Count IV)

To plead a claim for false imprisonment, Mr. Flaherty must plead facts establishing that Defendants caused "the unlawful restraint against his or her will of an individual's personal liberty." *Holmes v. Crossroads Joint Venture*, 262 Neb. 98, 118 (2001). For a private citizen to be liable for an arrest and detention made by a police officer, he must have "by affirmative direction, persuasion, or request procure[d] an unlawful arrest and detention of another." *Id.* As in the original Complaint, Plaintiffs again allege that the nondefendant officer's arrest of Mr. Flaherty constitutes false imprisonment. (Am. Compl. (Filing 56) ¶¶ 30, 54–58). This claim still fails because Mr. Flaherty was arrested for his self-alleged trespass.

First, Mr. Flaherty was correctly arrested for being a trespasser. Therefore, he was not falsely imprisoned as a matter of law. *Huskinson v. Vanderheiden*, 197 Neb. 739, 742 (1977) ("In order to attach liability to appellants it was necessary to prove the unlawfulness of the arrest."). In Nebraska, a police officer "may lawfully arrest and detain any person violating any law of this state or any legal ordinance of any city or incorporated village of this state." *Id.*; Neb. Rev. Stat. § 29-401 ("[e]very sheriff, deputy sheriff, marshal, deputy marshal, security guard, police officer, or peace officer . . . shall arrest and detain any person found violating any law of this state or any legal ordinance of any city"); Neb. Rev. Stat. § 14-606 ("Each police officer . . . may arrest all offenders against the ordinances of the city with or without a warrant.").

12

Here, Plaintiffs' violation of the City of Omaha's "Request to Leave" ordinance defeats any false imprisonment claim. The Request to Leave ordinance prohibits "any person" from "refus[ing] to leave the property of another after being notified to leave by the owner, occupant, person in control, and/or by their agent." Omaha Mun. Code § 20-155. The Amended Complaint expressly pleads that Mr. Flaherty refused to leave the 2023 Shareholder Meeting when so directed by the Security Guards allegedly hired by Berkshire Hathaway. (Am. Compl. (Filing 56) ¶¶ 26, 30). In so pleading, Mr. Flaherty pleads his own violation of the Request to Leave Ordinance. *Villalta v. Waller*, No. 8:04CV386, 2005 WL 8176137, at *2 (D. Neb. Nov. 30, 2005) ("In order to be guilty of failure to leave pursuant to Section 20-155 of the laws of the City of Omaha" the party must have "failed or refused to leave the Baker's store after being notified to do so by an authorized person."); *State v. Goering,* Nos. A-93-1128, A-93-1129, A-93-1130, A-93-1133, 1994 WL 585763, at *5 (Neb. Ct. App. 1994) ("It is undisputed in the record that the defendants were notified by the representative of the medical center and by the police to leave. They did not leave; therefore they violated the ordinance."). Because "it is [] apparent on the face of the Complaint that [Mr.] Flaherty violated § 20-155," it is equally apparent that the officer could lawfully arrest him. (Filing 36 at 19); *Holmes,* 262 Neb. at 98. "Accordingly, [Mr.] Flaherty's trespass defeats his false imprisonment claim," and Count IV should be dismissed.[8] (Dismissal Order (Filing 36) at 19).

Second, even if the arrest was unlawful (it was not), Mr. Clark is not liable for the independent decision of a police officer. *Edgar v. Omaha Pub. Power Dist*., 166 Neb. 452, 460

---

[8] To the extent that Plaintiffs intended to assert a malicious prosecution claim against Mr. Clark, that claim would fail for the same reason, as this Court already held. *Holmes,* 262 Neb. at 117 (malicious prosecution requires "absence of probable cause").

(1958). Here, the facts pled show Mr. Flaherty was arrested based on the independent judgment of the arresting police officer. Moreover, the Omaha Police Department requires the arresting officer to witness the trespasser refuse to leave in response to a request to leave before making any arrest.[9] Indeed, the video of the arrest—taken by Plaintiffs, posted on Mr. Flaherty's YouTube page, and referenced in the Amended Complaint (Am. Compl. (Filing 56 at 6) ¶ 25)—shows that the police officer witnessed Mr. Flaherty refusing to leave and then arrested him. *See State v. Rothenberger*, 294 Neb. 810, 822 (2016) ("When a law enforcement officer has knowledge, based on information reasonably trustworthy under the circumstances, which justifies a prudent belief that a suspect is committing or has committed a crime, the officer has probable cause to arrest without a warrant"). That is fatal to Mr. Flaherty's false imprisonment claim. At bottom, Mr. Flaherty asks this Court to turn asking for police assistance, itself, into a tort. But the Nebraska Supreme Court has cautioned against tort liability that "destroy[s] with fear and threats the recognized right and duty of the public to give information to law enforcement officers, which is a most effective instrument in the administration of criminal justice." *Edgar*, 166 Neb. at 463.

## II.    This Court Properly Dismissed Mr. Tovar's Intentional Tort Claims (Counts VI, VII, VIII)

Mr. Tovar brings three intentional tort claims: assault (Count VI); battery (Count VII); and false imprisonment (Count VIII). But Mr. Tovar is mentioned only three times in the facts of the Amended Complaint. He "planned to accompany Mr. Flaherty" to the 2023 Shareholder Meeting. (Am. Compl. (Filing 56 at 5) ¶ 21). He, in fact, "accompanied"

---

[9] *See* Trespassing Policy, Omaha Police Department, Section VI: Request to Leave, available at https://public.powerdms.com/OPDEP1/documents/854044 (confirming that if the "trespassing person has been ordered to leave" and "failed to do so," the "property owner/agent may request police to have the trespasser removed").

Mr. Flaherty to that meeting.  (*Id.* ¶ 21).  And he "tried to" accompany Mr. Flaherty to his arrest and detention, although one of the Security Guards "prevented him from doing so."  (*Id.* at 7, ¶ 30).  But Mr. Tovar's separation from Mr. Flaherty does not render Mr. Clark liable for assault, battery, and false imprisonment.  As this Court held in dismissing Mr. Tovar's intentional tort claims, "Plaintiffs base [Mr.] Tovar's three claims on 'mere legal conclusions and recitations of the elements of the causes of action.'"  (Dismissal Order (Filing 36) at 21).  The Amended Complaint pleads the same claims with the same conclusory recitations, and they fail for the same reason here.

In support of his assault claim, Mr. Tovar alleges that the Security Guards "threatened to harm and touch" him "in a harmful or offensive manner."  (Am. Compl. (Filing 56 at 11) ¶ 69).  As in the original Complaint, Plaintiffs "plead no facts" about the "menacing" "threats" made with "intent to inflict bodily injury" required to plead assault in Nebraska.  (Dismissal Order (Filing 36) at 21); *Reavis*, 250 Neb. at 717; *see, also, Bissonette v. Luskey*, No. 02-335 ADM/AJB, 2003 WL 1700466, at *3 (D. Minn. Mar. 27, 2003) (holding that an "assault claim must fail" where "Plaintiff has alleged no direct threats and has not identified when she feared imminent physical harm."); *Pinkston v. Bd. of Educ.*, No. 19 CV 6477, 2023 WL 6392302, at *6 (N.D. Ill. Oct. 2, 2023) (holding that a "[p]laintiff has not plausibly stated a claim for assault" when the "allegations comprise nothing more than a recital of the elements of an assault claim supported by mere conclusory statements").  Accordingly, Count VI should be dismissed.  (Dismissal Order (Filing 36) at 21).

To plead battery (Count VII), Mr. Tovar alleges that one of the Security Guards "touched him with the intent to harm or offend him" at the direction of "unknown officers or agents of Berkshire Hathaway."  (Am. Compl. (Filing 56 at 12) ¶ 75).  In the Dismissal Order,

15

this Court held that "[a]bsent additional facts," Mr. Tovar's battery claim is an "'unadorned, the-defendant-unlawfully-harmed-me accusation.'"  (Dismissal Order (Filing 36) at 21–22) (citation omitted); *see, also Nasuti v. Holm*, No. 3:22-cv-00025-RGE-SBJ, 2022 WL 18779981, at *5 (S.D. Iowa Oct. 31, 2022) ("Furthermore, [Plaintiff] alleges no facts to support the inference [Defendant] "intended to inflict a harmful or offensive" contact upon [Plaintiff's] body."); *Bell v. Dow Chem. Co.*, No. 21-326-SDD-SDJ, 2022 WL 1221639, at *9 (M.D. La. Mar. 11, 2022) ("Plaintiffs do not plead any facts in support of their conclusory allegations of the elements of battery.").  The Amended Complaint does not plead any additional facts.  Accordingly, Count VII should be dismissed.

As to Mr. Tovar's false imprisonment claim (Count VIII), the allegation that Mr. Tovar was "physically prevented" from accompanying Mr. Flaherty during his arrest (Am. Compl. (Filing 56 at 7) ¶ 30) is similarly insufficient to state a claim for false imprisonment.  At most, either Security Guard stood in front of Mr. Tovar for a few seconds.  Mr. Tovar does not plead that he was confined at all.  As pled, Mr. Tovar was free to sit down, leave the arena, or go to his hotel room.  He was not free to interfere with Mr. Flaherty's arrest.  Nor was he free to accompany, or follow, Mr. Flaherty during his arrest and detention.  *Cf. Dangberg v. Sears, Roebuck & Co.*, 198 Neb. 234, 238 (1977) (holding that false imprisonment requires "placing" the plaintiff "in a position" where he may not go where he "may lawfully go").  This Court properly held that the original Complaint does not allege facts sufficient to state a claim for false imprisonment. (Dismissal Order (Filing 36) at 22).  The Amended Complaint pleads no additional facts, and Count VIII should be dismissed.

### III.        Plaintiffs Mr. Flaherty and NLPC Have Failed to State a Claim for Promissory Estoppel

"Promissory estoppel is based on a party's detrimental reliance on another party's promise that would otherwise be an unenforceable contract." *Page v. Siedband*, No. A-19-121, 2023 WL 7499741, at *9 (Neb. Ct. App. Nov. 14, 2023). To plead a promissory estoppel claim under Nebraska law, a plaintiff must show "(1) a promise that the promisor should have reasonably expected to induce the plaintiff's action or forbearance, (2) the promise did in fact induce the plaintiff's action or forbearance, and (3) injustice can only be avoided by enforcing the promise." *Weitz Co., LLC v. Hands, Inc.*, 294 Neb. 215, 226 (2016).

Although far from clear, Plaintiffs appear to assert the promissory estoppel claim against all Defendants. But Plaintiffs do not allege that either Security Guard made a promise to Mr. Flaherty or NLPC. *Harrington v. Strong*, 363 F. Supp. 3d 984, 1011 (D. Neb. Jan. 29, 2019) (promissory estoppel required the "existence of a promise"). Indeed, Plaintiffs do not allege that the Security Guards had any communication with Plaintiffs at all, except for the request to leave or be arrested. *See* (Am. Compl. ([Filing 56 at 6](#)) ¶ 28). Plaintiffs characterize that as a threat, not a promise. *See* (*id.* at 8, ¶ 36; 11, ¶ 69). Even assuming Plaintiffs pled that Mr. Clark made a promise, they fail to allege how they relied on that promise to their detriment. Plaintiffs certainly did not fly to Omaha (Am. Compl. ([Filing 56 at 13](#)) ¶ 89) based on a promise from a Security Guard they met for the first time in Omaha. As a result, Plaintiffs cannot state a claim for promissory estoppel as to Mr. Clark. *See Fast Ball Sports, LLC v. Metro. Ent. & Convention Auth.*, 21 Neb. App. 1, 13 (2013) (promissory estoppel requires plaintiff to plead that defendants' conduct gave plaintiff a "reasonable expectation").

Instead, Plaintiffs' promissory estoppel claim appears to be based solely on the alleged conduct of the Berkshire Defendants. Even if that conduct were attributable to the Security

Guards (it is not), this Court held that the promissory estoppel claim fails as a matter of law. (Dismissal Order (Filing 36) at 23).  Plaintiffs were not and could not have been "induced" to incur expense to appear at the 2023 Shareholder Meeting based on a promise by Mr. Buffett or Berkshire Hathaway.  (*Id.*).  Under SEC regulations, a shareholder (like NLPC) who submits a shareholder proposal for consideration at the annual shareholder meeting "must attend the meeting to present the proposal."  17 C.F.R. §§ 240.14a-8(h)(1).  Accordingly, by choosing to make a shareholder proposal in advance of the 2023 Shareholder Meeting, Plaintiffs voluntarily assumed the burden of appearing at that meeting.  Plaintiffs could not have "change[d] their position" based on anything Defendants allegedly promised, and "therefore, no estoppel exists."  *Lovell v. Kearney*, 200 Neb. 478, 480 (1978).

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Amended Complaint with prejudice and grant Defendant Dan Clark such other and further relief as the Court deems just and proper.

Dated: April 16, 2025                    Respectfully submitted,

                                        DAN CLARK, Defendant

s/ Tara A. Stingley
Tara A. Stingley (#23243)
Isaiah J. Frohling (#26786)
CLINE WILLIAMS WRIGHT
 JOHNSON & OLDFATHER, LLP
12910 Pierce St., #200
Omaha, NE 68144
(402) 955-2441
tstingley@clinewilliams.com
ifrohling@clinewilliams.com

*Of Counsel*

Bryce L. Friedman, Admitted *Pro Hac Vice*
Meredith Karp, Admitted *Pro Hac Vice*
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
T: (212) 455-2000
bfriedman@stblaw.com
meredith.karp@stblaw.com

*Attorneys for Defendant Dan Clark*

## CERTIFICATE OF COMPLIANCE

I, Tara A. Stingley, hereby certify that this Brief complies with the limits set forth in NECivR. 7.1(d). Further, based on the word count function on Microsoft Office 365's Microsoft Word's word processing software, applied to include all text, including the caption, headings, footnotes, and quotations, I certify this Brief contains 6,559 words.

s/ Tara A. Stingley

## CERTIFICATE OF SERVICE

I, Tara A. Stingley, hereby certify I electronically filed the foregoing document on April 16, 2025, with the Clerk of the United States District Court for the District of Nebraska using the CM/ECF system, which sent an electronic copy to all registered case participants, including the following:

> Thomas J. Monaghan
> Stuart J. Dornan
> Dornan Troia Howard Breitkreutz
> Dahlquist & Klein, PC LLO
> 1403 Farnam Street, Suite 232
> Omaha, Nebraska 68102
> tom@dltlawyers.com
> stu@dltlawyers.com
> *Attorneys for Plaintiffs*

s/ Tara A. Stingley