IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NATIONAL LEGAL POLICY CENTER, PETER T. FLAHERTY, and JAMES "JAMIE" TOVAR, <br><br> Plaintiffs, <br><br> vs. <br><br> BERKSHIRE HATHAWAY, INC. WARREN BUFFETT, CHRIS THOMPSON, and DAN CLARK, <br><br> Defendants. | 8:24CV162 <br><br> MEMORANDUM AND ORDER ON DEFENDANT DAN CLARK'S MOTION TO DISMISS |

Plaintiffs National Legal Policy Center (NLPC), Peter T. Flaherty, and James Tovar (collectively, Plaintiffs) bring nine claims against Defendants Berkshire Hathaway, Warren Buffett, Chris Thompson, and Dan Clark. Filing 55 at 1. The Court presently considers Defendant Clark's Motion to Dismiss the claims against him for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Filing 69 at 1. Plaintiffs did not file an opposition to this Motion. For the following reasons, the Court grants Clark's Motion, the claims against defendant Thompson are dismissed without prejudice *sua sponte* for failure to timely serve that Defendant, judgment is entered in favor of the other Defendants, and this case is dismissed in its entirety.

I. INTRODUCTION

The Amended Complaint in this case makes factual allegations identical to those in the Original Complaint, with the exception of the John Does' identities. As such, the Court declines to recite the entire factual and procedural background set out in Filing 36. See *Nat'l Legal Policy Ctr v. Berkshire Hathaway Inc.,* No. 8:24CV162, 2024 WL 4605410 (D. Neb. Oct. 29, 2024)

1

(memorandum and order on Berkshire Hathaway's and Warren Buffett's Motion to Dismiss and Motion to Strike). Therefore, the Court focuses its discussion on the history subsequent to the Amended Complaint and the Motion to Dismiss Order set out in Filing 36. However, for context, the Court will also summarize the disposition of the prior Motion to Dismiss.

### A. The Prior Motion to Dismiss

In June 2024—before the John Doe Defendants had been identified—Defendants Berkshire Hathaway and Warren Buffett filed a Motion to Dismiss all claims filed against them. Filing 20. On October 29, 2024, the Court granted the Motion to Dismiss[1] because of Flaherty's self-alleged trespass and Plaintiffs' failure to allege sufficient factual matter in the pleadings to plausibly state their claims. Filing 36 at 25.

In the previous Motion to Dismiss Order, the Court noted that Federal Rule of Civil Procedure 4(m) requires Plaintiffs to serve defendants, named and unnamed, within 90 days after filing their complaint. Filing 36 at 24; Fed. R. Civ. P. 4(m). At the time of the Order, Plaintiffs had yet to name or provide a service of summons and complaint on the John Doe Defendants, then identified only as unnamed security guards. Filing 36 at 24. Plaintiffs had also failed to file a motion for an extension of time to permit discovery of the John Doe Defendants' identities. Filing 36 at 24. Accordingly, the Court ordered that Plaintiffs claims against "John Does 1 and 2" be dismissed within seven days of the Order, absent a motion for extension of time demonstrating good cause. Filing 36 at 25.

---

[1] The Court also granted the Defendant's Motion to Strike the Declaration of Flaherty. Filing 36 at 25.

B. Subsequent Proceedings

In response to this Order, Plaintiffs sought an extension of time to serve the "Doe Defendants." Filing 55 at 2. The Court granted the Motion and ordered Plaintiffs to perfect service on or before November 27, 2024. Filing 55 at 2. Plaintiffs filed an Amended Complaint which named Chris Thompson and Dan Clark as defendants and requested summonses for them. Filing 55 at 2. The Amended Complaint was then stricken for being filed without leave. Filing 55 at 2. However, prior to the Order striking the Amended Complaint, Plaintiffs sought an extension to serve Chris Thompson and Dan Clark (collectively, Security Guard Defendants). Filing 55 at 2. The Court denied Plaintiffs' motion as moot because after the Amended Complaint was stricken the defendants named in Plaintiffs' extension were not named in the operative complaint. Filing 55 at 2.

Plaintiffs next tried to appeal the October 29, 2024, Order dismissing the claims against Berkshire Hathaway and Warren Buffett, which the Eighth Circuit Court of Appeals dismissed for lack of jurisdiction. Filing 55 at 2. The magistrate judge issued an order to show cause why the case should not be dismissed for want of prosecution, and in response Plaintiffs filed a motion for leave to file an Amended Complaint. Filing 55 at 2. The magistrate judge granted leave to amend and *sua sponte* extended Plaintiffs' deadline to serve the Security Guard Defendants. Filing 55 at 2–3.

Since the proposed Amended Complaint is identical to the first, it realleges the claims against Berkshire Hathaway and Warren Buffett that were already dismissed by the Court. Filing 55 at 3. The magistrate judge recommended that the Court dismiss the claims against Berkshire Hathaway and Warren Buffett for the reasons articulated in the Court's previous order. Filing 55 at 3; Filing 36. On March 11, 2025, the Court accepted this recommendation and ordered that the

3

claims against defendants Berkshire Hathaway and Warren Buffett again be dismissed in their entirety. Filing 63 at 3.

On April 16, 2025, Clark filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Filing 69 at 1. Specifically, Clark seeks to dismiss Flaherty's and Tovar's separate claims against him for assault, battery, and false imprisonment, as well as the NLPC's and Flaherty's promissory estoppel claim. Filing 70 at 13–14. Plaintiffs did not file any timely opposition to Clark's Motion.

## I.   ANALYSIS

### A.   Preliminary Matters

The Court notes that Plaintiffs' original Complaint and Amended Complaint raise jurisdictional concerns. Filing 36 at 5. Both the original Complaint and the Amended Complaint allege that the Court has jurisdiction over this matter "pursuant to 28 U.S.C. § 1332(d) because: (a) there is a complete diversity of citizenship between Plaintiffs and Defendants; and (b) the amount in controversy exceeds $75,000 exclusive of costs and interests." Filing 56 at 1. In its prior ruling, Filing 36, the Court assumed Plaintiffs intended to invoke the Court's original diversity jurisdiction pursuant to § 1332(a)(1), rather than § 1332(d), which is a provision of the Class Action Fairness Act. Filing 36 at 5. The Court makes this same assumption for the Amended Complaint, despite Plaintiffs' failure to correct the statute on which they base jurisdiction.

Plaintiffs bring nine claims against all defendants. Filing 56 at 7–13. However, Plaintiffs do not clearly identify the defendants against whom each count is alleged, so it is unclear from the Amended Complaint whether Plaintiffs intend to bring all nine claims against Clark. Filing 36 at 7; *see* Filing 56. Clark opines that Flaherty does not intend to assert claims of intentional infliction of emotional distress and malicious prosecution against him. *See* Filing 70 at 12 n.6. He explains,

4

> Mr. Flaherty expressly asserts his claim for intentional infliction of emotional distress (Count III) only against the Berkshire Defendants. (Am. Compl. (Filing 56) at 9, ¶ 53) ("Plaintiff Peter T. Flaherty seeks nominal damages against Warren Buffett and Berkshire Hathaway"). Similarly, his claim for malicious prosecution [(Count V)] is pled only against "Defendant Warren Buffett and/or agents of Berkshire Hathaway." (*Id.* ¶ 59). *Compare with* (*id.* ¶ 48) ("Peter Flaherty seeks damages against Chris Thompson and/or Dan Clark and Berkshire Hathaway.").

Filing 70 at 12 n.6. So, Clark's briefing does not include arguments against Flaherty's claims of intentional infliction of emotional distress (Count III) and malicious prosecution (Count V). *See* Filing 70. Accordingly, the Court does not discuss those claims, either. *See Olson v. Fairview Health Servs. Of Minn.*, 831 F.3d 1063, 1073 (8th Cir. 2016) (noting that with a motion to dismiss there is "well-established circuit precedent [that] we generally consider an issue not raised or briefed waived." (citing *Bechtold v. City of Rosemount*, 104 F.3d 1062, 1068 (8th Cir. 1997))).

On the other hand, if Plaintiffs intended to bring any other claims against Dan Clark, the Amended Complaint is too vague to state those claims against Clark or even to give him notice that the claims were asserted against him. *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 757–58 (8th Cir. 2021) (stating that "vague and conclusory allegations were insufficient to survive a motion to dismiss under Rule 12(b)(6)"). Plaintiffs are not *pro se* litigants entitled to liberal construction of their Amended Complaint. Furthermore, Plaintiffs did not respond to Clark's Motion to Dismiss by asserting that they intended to assert additional claims against him, so they too have waived any such contention. *See Olson*, 831 F.3d at 1073.

Therefore, the Court only discusses Flaherty's claims of assault (Count I), battery (Count II), and false imprisonment (Count IV) against Clark. Tovar's only claims are assault (Count VI),

battery (Count VII), and false imprisonment (Count VIII)[2] against Clark. The Court will discuss those claims as well as Flaherty's and the NLPC's promissory estoppel claim (Count IX) against Clark.

### B. Standards for Rule 12(b)(6) Dismissals

The Court previously set out the standards for a Rule 12(b)(6) motion to dismiss for failure to state a claim in some detail in Filing 36 at 7–10. Accordingly, the Court does not repeat these standards.

### C. Flaherty's Intentional Tort Claims against Clark

The Court first determines whether Flaherty's three intentional tort claims survive the Motion to Dismiss. In this section, the Court addresses Count I (assault), Count II (battery), and Count IV (false imprisonment). Since the Court has already discussed issues raised in this motion in detail, Filing 36, the Court does not rehash issues that have already been discussed and decided in its ruling on Berkshire Hathaway's and Warren Buffett's Motion. *See* Filing 36. Further, the Court assumes without deciding for the purpose of ruling on this Motion that the Security Guard Defendants acted as agents of Berkshire Hathaway and Warren Buffett. The Court notes that, if it assumes the Security Guard Defendants acted as agents of Berkshire Hathaway and Warren Buffett, it could perhaps also assume that the intentional infliction of emotional distress and malicious prosecution claims include Clark as a defendant because those claims reference actions by "agents" of Berkshire Hathaway and Warren Buffet. *See, e.g.,* Filing 56 at 9 (¶ 50) ("The conduct of Berkshire Hathaway, Warrant Buffett and their agents . . . intended to cause [Flaherty]

---

[2] In both the original and Amended Complaint, Plaintiffs incorrectly label Tovar's false imprisonment claim "Count IV," as they also label Flaherty's false imprisonment claim "Count IV." The Court will refer to Tovar's false imprisonment claim as "Count VIII."

emotional distress."); Filing 56 at 10 (¶ 59) ("Warren Buffett and/or agents of Berkshire Hathaway caused criminal proceedings . . . ."). However, as explained above, Plaintiffs waived any such contention by failing to respond to Clark's Motion to Dismiss. See Olson, 831 F.3d at 1073.

   1. *Clark's Arguments*

Clark argues that Flaherty's intentional tort claims against him must fail as a matter of law, because Flaherty became a trespasser during the shareholders meeting. Filing 70 at 15. In the Amended Complaint, Plaintiffs allege that after Flaherty began speaking about "Bill Gates's relationship with Jeffrey Epstein," the Security Guard Defendants[3] asked him to leave or face arrest. Filing 56 at 6. Flaherty then alleges that he did not leave the meeting upon the Security Guard Defendants' request. Filing 56 at 6–7. Clark opines that after Flaherty was ordered to leave and refused, "two things [were] apparent on the face of the complaint." Filing 70 at 15 (quoting Filing 36 at 14). "[F]irst, Flaherty became a trespasser when he remained at the meeting after he was told to leave and second, the [] Defendants had the right to eject him from the meeting." Filing 70 at 15 (quoting Filing 36 at 14). Therefore, Clark argues that since he had the "legal 'privilege to eject [Mr.] Flaherty from the meeting[,]'" that privilege is "fatal to all of [Mr.] Flaherty's intentional tort claims." Filing 70 at 15 (quoting Filing 36 at 14). The Court agrees.

   2. *Applicable Law*

 The Court already set out the applicable Nebraska law on trespass in Filing 36 at 11–12.

   3. *Application*

Plaintiffs allege in their Amended Complaint that Flaherty remained at the shareholders meeting after Clark had asked him to leave. Filing 56 at 6–7. Plaintiffs also do not dispute that

---

[3] Aside from the jurisdictional allegations, the Amended Complaint refers to Chris Thompson and Dan Clark as one entity. *See, e.g.*, Filing 56 at 7 ("Chris Thompson and/or Dan Clark").

Berkshire Hathaway maintained legal possession of the CHI health center during the meeting. *See generally* Filing 56; *see also Flobert Industries, Inc. v. Stuhr,* 343 N.W.2d 917, 920–21 (Neb. 1984) (finding that an individual "need only have title or possession of the land when the acts complained of were committed" to recover for trespass). Therefore, Clark, acting as agent of Berkshire Hathaway, also held legal possession of the CHI health center during the meeting. *See State v. Rieker,* 14 N.W.3d 855, 869–70 (Neb. 2025) (explaining that the use of force is justifiable to prevent a trespass provided that the land is "believed by the actor to be, in his possession or in the possession of another person for whose protection he acts[.]" (quoting Neb. Rev. Stat. § 28-1411)). As the Court has already stated, "it is apparent on the face of the Complaint that Flaherty became a trespasser when he 'remained upon premises in possession of another without the express or implied consent of the possessor.'" Filing 36 at 13 (quoting *Kenney v. Barna,* 341 N.W.2d 901, 902 (Neb. 1983)). Consequently, it is apparent that Clark, as Berkshire Hathaway's agent, "had the right to eject Flaherty by force." Filing 36 at 13; *see Chicago, B. Q.R. Co. v. White,* 103 N.W. 661, 662 (Neb. 1905). The Court finds that Clark's right to eject Flaherty is fatal to each of Flaherty's claims. Nevertheless, the Court will address in turn each of Flaherty's intentional tort claims.

    a. Plaintiffs Fail to State Flaherty's Assault Claim

The Court previously discussed the applicable Nebraska law on assault in Filing 36 at 13. Plaintiffs attempt to plead assault by alleging that Clark "threatened to harm" Flaherty in a "harmful or offensive manner" when Clark warned Flaherty he would be arrested if he did not leave the meeting. Filing 56 at 6, 8. This claim clearly fails, as the Court has already stated that "Flaherty became a trespasser when he remained at the meeting after he was told to leave[,]" and that Clark had the right to eject him. Filing 36 at 14. In light of Flaherty's self-alleged trespass,

"the Court cannot reasonably infer that [Clark] did anything more than exercise [his] legal privilege to eject a trespasser from the shareholders meeting." Filing 36 at 14. As such, Count I is dismissed as to Clark.

b. Plaintiffs Fail to State Flaherty's Battery Claim

The Court already laid out the applicable Nebraska law on battery in Filing 36 at 14. As the Court previously stated, Flaherty's battery claim fails because "[a]t most, Plaintiffs allege that a 'uniformed policeman' was 'summoned' by one of the Doe Defendants." Filing 36 at 15. As the Court further stated,

> This allegation supports the reasonable inference that the officer was acting in a law enforcement capacity during the shareholders meeting given an officer must use the authority given to him or her pursuant to his or her public position to effectuate an arrest, take a person to the police station, and book them. Moreover, Plaintiffs do not cite and the Court does not find any authority that an agency relationship forms between a person who asks for police assistance and the officer who responds. Accordingly, Plaintiffs fail to state Flaherty's battery claim to the extent it is based on the conduct of the nondefendant officer.

Filing 36 at 15.

Plaintiffs' Amended Complaint also alleges battery occurred when Clark "touched" Flaherty. Filing 56 at 8. As the Court has already stated, "[b]ecause Flaherty became a trespasser when he refused to leave the shareholders meeting, [Clark] '[was] authorized to use such reasonable force as was necessary to eject' Flaherty from the meeting." Filing 36 at 15 (quoting *Reed v. Chicago, B. & Q.R. Co.,* 120 N.W. 442, 444 (Neb. 1909)). Plaintiffs do not describe the nature of this "touch," but even so, "a property possessor's privilege to eject a trespasser by reasonable force includes 'tak[ing] him by the arm or coat sleeve and lead[ing] him quietly from the [property].'" Filing 36 at 15 (quoting *Reed,* 120 N.W. at 444). Again, in light of Flaherty's trespass, Clark's "'touch' is a privileged act 'which, under the circumstances, does not subject the

actor to liability.'" Filing 36 at 16 (quoting *Dion v. City of Omaha,* 973 N.W.2d 666, 687 (Neb. 2022)). Accordingly, Count II is dismissed as to Clark.

      c.  Plaintiffs Fail to State Flaherty's False Imprisonment Claim

The Court has already discussed the relevant Nebraska law on false imprisonment in Filing 36 at 17. Plaintiffs believe Flaherty's arrest—an arrest initiated by Clark's summoning of a nearby police officer—constituted false imprisonment. *See* Filing 56 at 10. However, Clark argues that Flaherty was properly arrested for trespassing so, as a matter of law, he could not be falsely imprisoned. Filing 70 at 18. Clark also states that even if the arrest was unlawful, he cannot be found liable for the independent decision of a police officer. Filing 70 at 20. The Court is convinced that this arrest does not constitute false imprisonment and that Clark is not liable for the actions of the nonparty police officer. As the Court has already explained:

> Even if the Court construes Flaherty's false imprisonment claim against [Clark] as an allegation of private citizen liability, Plaintiffs have not pleaded facts showing that the officer unlawfully arrested Flaherty. In Nebraska, a police officer "may lawfully arrest and detain any person violating any law of this state or any legal ordinance of any city or incorporated village of this state." *Holmes,* 629 N.W.2d at 528 (citing Neb. Rev. Stat. § 29-104, which states in relevant part, "Every . . . police officer . . . shall arrest and detain any person violating any law of this state or any legal ordinance of any city of incorporated village until a legal warrant can be obtained"). [Clark] argues that along with pleading Flaherty's violation of Nebraska trespass law, Plaintiffs' [Amended] Complaint pleads Flaherty's violation of § 20-155 of the Omaha Municipal Code. Filing 21 at 12–15. Section 20-155 is titled "Request to leave" and provides, "It shall be unlawful for any person to fail or refuse to leave the property of another person after being notified to do so by the owner, occupant or person in control thereof, or by his agent." Omaha. Mun. Code § 20-155.
>
> As the Court has already explained, it is apparent on the face of the [Amended] Complaint that Flaherty remained at the shareholders meeting after [Clark] – the alleged agent[] of the Berkshire Defendants – told him to leave. Thus, it is also apparent on the face of the [Amended] Complaint that Flaherty violated § 20-155. *See State v. Goering,* Nos. A-93-1128, A-93-1129, A-93-1130, A-93-1133, 1994 WL 585763, at *5 (Neb. Ct. App. 1994) ("It is undisputed in the record that the defendants were notified by the representative of the medical center and by the

police to leave. They did not leave; therefore they violated the ordinance."). When [Clark] summoned a nearby police officer and requested that the officer arrest Flaherty, Flaherty was already a trespasser, and he had already violated § 20-155. Because Flaherty had violated a legal ordinance of a Nebraska city, the officer could lawfully arrest him under Neb. Rev. Stat. § 29-401. *See Holmes,* 629 N.W.2d at 528.

Filing 36 at 18–19. Count IV against Clark is dismissed for these same reasons.

### D. Tovar's Intentional Tort Claims

The Court now addresses plaintiff Tovar's three intentional tort claims asserted against Clark. Tovar alleges Count VI (assault), Count VII (battery), and Count VIII (false imprisonment). Filing 56 at 11–12. Tovar's claims must satisfy the same Rule 12(b)(6) standards discussed in Filing 36 at 7–10. Tovar's claims have not met this standard.

As Clark aptly points out, Tovar is only discussed three times in the facts section of the Amended Complaint. Filing 70 at 20. Plaintiffs allege that (1) Tovar "planned to accompany Flaherty," (2) that he actually did accompany Flaherty, (3) and that he "tried" to accompany Flaherty to his arrest and detention but was "prevented from doing so" by the Security Guard Defendants. Filing 56 at 5; Filing 56 at 7. Plaintiffs base Tovar's claims on "mere legal conclusions and recitations of the elements in the causes of action." *Glick v. W. Power Sports, Inc.,* 944 F.3d 714, 717 (8th Cir. 2019).

Ultimately, the lack of additional factual allegations defeats all claims Tovar has asserted against Clark. As the Court previously held,

> Plaintiffs claim that "[the Security Guard Defendants] threatened to harm or touch Tovar in a harmful or offensive matter," but they plead no facts showing that any threat occurred. *See Bergman [v. Anderson],* 411 N.W.2d [336], 336 [(Neb. 1987)] (listing the elements of assault, including the requirement of showing "a wrongful offer or attempt with force or threats" (internal quotation marks and citation omitted)). Accordingly, Tovar's assault claim, Count VI, is dismissed. Plaintiffs similarly claim that [the Security Guard Defendants] "touched [Tovar] with the intent to harm or offend him," but Plaintiffs do not allege any facts

11

describing the "touch." See *Bergman,* 411 N.W.2d at 336 (explaining that battery requires "an actual infliction of an unconsented injury upon or unconsented contact with another" (internal quotation marks omitted)). Absent any additional facts, Plaintiff's allegation that [the Security Guard Defendants] "physically prevented" Tovar from following Flaherty is an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Kulkay [v. Roy],* 847 F.3d [637,] [] 642 [(8th Cir. 2017)] (internal quotation marks and citation omitted). As a result, Tovar's battery claim, Count VII, is dismissed.

Plaintiffs also claim that "[The Security Guard Defendants] caused [Tovar] to be confined [to the CHI Health Center arena] without his consent," but they do not allege facts showing that any defendant placed Tovar in a position where he could not "exercise his will in going where he . . . may lawfully go." *Holmes,* 629 N.W.2d at 527. At most, Plaintiffs allege that Tovar could not follow Flaherty after his arrest. Plaintiffs do not plead facts indicating that Tovar was otherwise prevented from leaving the shareholders meeting. Accordingly, Tovar's false imprisonment claim, Count VIII, is dismissed.

Filing 36 at 21–22. The Court upholds its previous ruling. Accordingly, Count VI, Count VII, and Count VIII are dismissed as to Clark.

### E. The NLPC's and Flaherty's Promissory Estoppel Claim

The Court now turns to whether the NLPC's and Flaherty's promissory estoppel claim survives Clark's Motion to Dismiss. The Court has already outlined the necessary elements to plead a promissory estoppel claim in Nebraska. Filing 36 at 22–23.

It appears that Plaintiffs attempt to assert the promissory estoppel claim against all Defendants, despite the Security Guard Defendants having no interaction with Plaintiffs prior to the shareholders meeting. Filing 56 at 13. Clark opines that this claim against him must fail because "Plaintiffs do not allege that either [Security Guard Defendant] made a promise to [Flaherty] or [the] NLPC." Filing 70 at 23. Further, Clark reasons that "Plaintiffs do not allege [the Security Guard Defendants] had any communication with Plaintiffs at all, except for the request to leave or be arrested[,]" which Plaintiffs previously characterize as a threat. Filing 70 at 13.

Plaintiffs have not stated a claim against Clark for promissory estoppel. Promissory estoppel necessitates the existence of a promise, and in this case, no promise by Clark is alleged. *See Harrington v. Strong,* 363 F.Supp.3d 984, 1011 (D. Neb. Jan. 29, 2019) (finding that the plaintiffs had "failed to allege the existence of a promise, the enforcement of which is necessary to avoid an injustice."); *see also Weitz Co. v. Hands,* 882 N.W.2d 659, 668 (Neb. 2016) (holding that a promise "need not be definite enough to support a unilateral contract, but it must be definite enough to show that the plaintiff's reliance on it was reasonable and foreseeable." (internal citation omitted)). As such, Count IX is dismissed as to Clark.

### F. Claims Against Defendant Chris Thompson

Following the filing of Plaintiffs' motion for leave to file an amended complaint, Filing 53, the magistrate judge *sua sponte* extended the deadline to perfect service on the "Doe Defendants" on February 11, 2025. Filing 55 at 3–4. Federal Rule of Civil Procedure 4(m) requires Plaintiffs to serve defendants within 90 days after filing their Complaint. Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."). Plaintiffs filed their Amended Complaint on February 14, 2025, making the 90-day deadline May 15, 2025. Filing 56 at 14. On March 14, 2025, Plaintiffs attempted to serve Thompson twice, but the summons was returned unexecuted. Filing 65; Filing 66. As of the date of this Order, Thompson has still not been served. The Court finds no good cause to extend the deadline further for Plaintiffs to serve Thompson. Fed. R. Civ. P. 4(m). Accordingly, the Court dismisses all counts asserted against Thompson without prejudice.

## II. CONCLUSION

Because of Flaherty's trespass and Plaintiffs' failure to allege sufficient factual matter to plausibly state their claims, Counts I, II, IV, VI, VII, VIII, and IX are dismissed against Defendant Clark. Further, since the Amended Complaint is too vague to state a claim or give Clark notice that intentional infliction of emotional distress and malicious prosecution claims are being asserted against him, coupled with the Plaintiffs' failure to respond to Clark's Motion to Dismiss, those claims (Counts III, and V) are also dismissed with prejudice. Also, because of Plaintiffs' failure to timely serve defendant Thompson, all claims asserted against him (Counts I–IX) are dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m). These conclusions, in conjunction with the Court's ruling on the prior Motion to Dismiss by Berkshire Hathaway and Warren Buffet, Filing 36, leave no claims unresolved, so that entry of judgment is appropriate as to Defendants Berkshire Hathaway, Warren Buffet, and Dan Clark.

IT IS ORDERED that

1.   Dan Clark's Motion to Dismiss all claims against him, Filing 69, is granted.

2.   Counts I–IX asserted against Chris Thompson, Filing 56, are dismissed without prejudice.

IT IS FURTHER ORDERED that Judgment shall enter accordingly in favor of Defendants Berkshire Hathaway, Warren Buffet, and Dan Clark. This case is dismissed in its entirety.

Dated this 8th day of August, 2025.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge

14